UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

EVANTHIA C. ARETAKIS and
CHARLES F. SVIRK, JR.,

05    10257 DPW

2005 FEB 9 P 1: 24

U.S. DISTRICT COURT
DISTRICT OF MASS.

Plaintiffs,

v.

Civil Action No.

GENERAL SIGNAL, INC., GENERAL
SIGNAL NETWORKS, INC., SPX CORP.,
INRANGE TECHNOLOGIES CORP.,
ROBERT COACKLEY, "JOHN DOE" and
"JANE DOE,"

MAGISTRATE JUDGE Alexander

Defendants.

RECEIPT # _____
AMOUNT $250
SUMMONS ISSUED N/A
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY CLK _____
DATE 2/9/05

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441, defendant Inrange Technologies

Corp. ("Inrange") hereby removes the above-captioned action to the United States District Court

for the District of Massachusetts. In support of this removal, Inrange states as follows:

1.     On January 12, 2005, Inrange was served with a Summons and Complaint (the

"Complaint"), a copy of which is attached hereto as Exhibit A. The Complaint was captioned in

the Superior Court of Suffolk County, Commonwealth of Massachusetts, and was titled *Evanthia*

*C. Aretakis, et al. v. General Signal, Inc., et al.,* C.A. No. 2004-3127. The Summons and

Complaint constitute all process, pleadings, and orders served upon Inrange to date in this action.

2.     The plaintiffs allege in their Complaint that they are residents of the State of New

Hampshire.

3.     Inrange is a Delaware corporation with its principal place of business in

Plymouth, Minnesota. Prior to changing its name to Inrange Technologies Corp. in 1998,

Inrange was known as General Signal Networks, Inc. ("GSNI"), one of the other named defendants in this action.

4.     Upon information and belief, defendant SPX Corp. ("SPX") is a Delaware corporation with a principal place of business in North Carolina.

5.     Upon information and belief, defendant "General Signal, Inc." is improperly named in the Complaint. General Signal Corporation, which is not named in the Complaint, is the former parent corporation of Inrange, and upon information and belief is now a wholly owned subsidiary of SPX.

6.     The Complaint alleges that defendant Robert Coackley is a resident of the State of New Jersey or the State of California. Although the plaintiffs have filed returns of service with the Superior Court as to Inrange, SPX and GSNI (through Inrange), they have not filed a return of service as to Coackley. Upon information and belief, Coackley has not yet been served with process in this action.

7.     The United States District Court for the District of Massachusetts has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the dispute is between citizens of different states and, based upon the causes of action asserted and the relief sought in the Complaint, the amount in controversy is in excess of $75,000, exclusive of interest and costs.

8.     This Notice of Removal is being filed within 30 days after receipt by Inrange of a copy of the Summons and Complaint and is timely filed under 28 U.S.C. § 1446(b).

9.     Inrange has contacted SPX, who consents to this Removal. As described above, upon information and belief, Inrange and SPX are the only corporate defendants that exist at this time. They are also the only defendants (along with GSNI, which is simply Inrange's former name) for which returns of service have been filed.

2

WHEREFORE, Inrange respectfully requests that the above action now pending in the Superior Court, Suffolk County, Commonwealth of Massachusetts, be removed to the United States District Court for the District of Massachusetts.

INRANGE TECHNOLOGIES CORP.

By its attorneys,

Jeffrey L. Levy (BBO# 559438)
CORRIGAN & LEVY LLP
896 Beacon Street
Boston, Massachusetts 02215
(617)247-3800

Of counsel:

T.J. Conley
LEONARD, STREET AND DEINARD
PROFESSIONAL ASSOCIATION
150 South Fifth Street, Suite 2300
Minneapolis, Minnesota 55402
(612) 335-1500

Dated: February 9, 2005.

## Certificate of Service

I hereby certify that on February 9, 2005, I caused a copy of this document to be served on counsel for the plaintiffs, Kenneth I. Gordon, Esq., 63 Chatham Street, Boston, MA 02109 by first class mail.

Jeffrey L. Levy

# Commonwealth of Massachusetts

A TRUE OF TRUE COPY. ATTEST

SUFFOLK, ss.

**SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT CIVIL ACTION**

COURT APPOINTED PROCESS SERVER

No. _04-3127-6_

_Evangelia C Apostolis + Charles F Swirk Jr_ , Plaintiff(s)

_Genesis Signal INC Genevac Signal Networks, Inc SPKGP, Infinge Technologies, LLC_ , Defendant(s)

_Robert Cipkley, John Doe + Jane Doe_

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon _Kenneth I Gordon_

plaintiff's attorney, whose address is _63 Chatham St Boston MA 02109_, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, ~~Barbara J. Rouse~~, Esquire, at Boston, the ___11th___ day of ___January___, in the year of our Lord two thousand ___05___.

_Michael Joseph Donovan_

Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFFS ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
    (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev.

**NOTICE TO DEFENDANT** — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

# COMMONWEALTH OF MASSACHUSETTS

## SUFFOLK, S.S.

**SUPERIOR COURT
CIVIL ACTION NO.**

EVANTHIA C. ARETAKIS and
CHARLES F. SVIRK, JR.,

                Plaintiffs,       )  **COMPLAINT AND**
                             )  **JURY TRIAL DEMAND**

    -v.-                       )

GENERAL SIGNAL, INC., GENERAL SIGNAL  )
NETWORKS, INC., SPX CORP., INRANGE    )
TECHNOLGIES CORP., ROBERT COACKLEY,  )
"JOHN DOE" and "JANE DOE",           )
                    Defendants.  )

    1    The Plaintiffs, EVANTHIA C. ARETAKIS and CHARLES F. SVIRK, JR.

(hereinafter collectively referred to as the "Plaintiffs" and individually referred to as "Aretakis"

and "Svirk", respectively) by their attorney, John A. Aretakis, Esq. and local counsel Kenneth

Gordon, Esq., as and for their Complaint, herein respectfully allege upon information and belief

as follows:

## PARTIES AND JURISDICTION

    2.    That the Plaintiff Evanthia C. Aretakis (hereinafter "Plaintiff", at all relevant

times herein, resided in the Commonwealth of Massachusetts, and now resides in Hollis, New

Hampshire.

    3.    That the Plaintiff Charles F. Svirk (hereinafter "Plaintiff"), at all relevant times

herein resided in the Commonwealth of Massachusetts, and now resides in Hollis, New

Hampshire.

    4.    That the defendant General Signal, Inc. (hereinafter "GS") is a corporation and

that, upon information and belief, is licensed to do business in the Commonwealth of

A TRUE OF TRUE CONF. ATT

( Atlanta M. ( ishbyshiry

COURT APPOINTED PROCESS SERVER

Massachusetts and has an office for the transaction of business in the Commonwealth of Massachusetts.

5. That defendant General Signal Networks, Inc. (hereinafter "GSN") is corporation and that upon information and belief, is licensed to do business in the Commonwealth of Massachusetts and has an office for the transaction of business in the Commonwealth of Massachusetts.

6. That the defendant SPX Corp. (hereinafter "SPX") is a corporation, and that, upon information and belief, is licensed to do business in the Commonwealth of Massachusetts, and has an office for the transaction of business in the Commonwealth of Massachusetts.

7. That the defendant Inrange Technologies Corp. (hereinafter "Inrange") is a corporation, and that, upon information and belief, is licensed to do business in the Commonwealth of Massachusetts and has an office for the transaction of business in the Commonwealth of Massachusetts.

8. That, upon information and belief, the defendant SPX has acquired the stock and assumed the assets, obligations and liabilities of the defendant GS with respect to the ownership of defendant GSN.

9. That, upon information and belief, the defendant Inrange, or any company or entity that purchases or succeeds Inrange is the resulting company after the acquisition by the defendant SPX of the stock, assets, obligations and liabilities of the defendant GS with respect to the ownership of defendant GSN.

10. That the Defendant Robert Coackley (hereinafter "Coakley") was, upon information and belief, a resident of the State of New Jersey and/or California.

2

That, upon information and belief, the Defendant Coackley was, at all relevant times, the President of the defendant GSN and was, upon information and belief, the President of the Defendant Inrange and had the authority to act on their behalf, and that all relevant contracts and agreements occurred in the State of Massachusetts.

12.    That Defendant GSN was, at all relevant times, a division and wholly owned subsidiary of the Defendant GS.

13.    That, upon information and belief, the Defendant GS, as the parent company of the Defendant GSN, at all relevant times owned the assets and assumed the obligations and liabilities of the Defendant GSN.

14.    That, upon information and belief, the Defendant Inrange (successor to the Defendant GSN) is a wholly owned subsidiary of the Defendant SPX.

15.    That, upon information and belief, the Defendant GSN, is or was, at all relevant times, a subsidiary of Defendant GS transacting business in New York State, with offices at 90 West Street, Suite 1908, City and County of New York, State of New York, and upon information and belief, in Massachusetts.

16.    In December 1996, Christian and Timbers, an executive search firm, contacted the Plaintiff on behalf of GSN, a subsidiary of GS. A search had been initiated to find a General Manager for the GSN unit in Westford, Massachusetts. At this point, Siemens had employed the Plaintiff for a little more than twelve years. The search firm confirmed the intention of this unit to spin off from the parent company and that the position would involve an equity position in the new company.

17.    In or about January 1997 through April 1997, there were numerous conversations around the expectation for an immediate spin off of GSN from the parent

3

company GS. Robert Coackly and GSN Human Resource Vice President stated that the spin off was "imminent" and value of stock to be granted to GSN General Managers would be in the approximately $2,500,000.00 (representation was made that 20,000,000.00 shares outstanding, of which 5% would be granted to the Management team, and this represented 5/8 of 1% to Plaintiff) and valuation was represented on a value base of $20 per share in two years which would yield the estimated valuation of $2,500,000.00). These conversations were confirmed with the GSN Vice President of Human Resources, Mr. Bill von Reichbauer. An oral contract was entered into by and between the parties for the exact and specific shares.

18.     On June 6, 1997, an offer letter from GSN was received by the Plaintiff and signed indicating a start date of July 7, 1997. The Plaintiff was requested to begin immediately as the spin off of the company would be happening very quickly and required the management team to be in place. The Plaintiff would forego Siemens' bonuses money, and related salary and benefit components, which would have required staying with the company until end of September. The Plaintiff accepted the Defendants' offer on July 7, 1997.

19.     In or about July through September 1997, there were numerous discussions and correspondence exchanged between the Plaintiff and Defendants GSN, Coackley, etc., which indicated that 1998 budgeting assumptions for the Plaintiff's unit as well as the other units would include costs of the spin, and continuous confirmation of spin.

20.     During this period, it became obvious to the Plaintiff and her colleagues that Mr. Coackley's original commitment of the spin for August 1997 was or could be impossible to achieve timely. The Form 10 had not been prepared and there were no formal documents filed with the Securities Exchange Commission (SEC) on the pending spin. The Plaintiff and

4

her colleagues raised these concerns in numerous staff meetings at which time indications of delays were provided. It was a major concern at this time that, given the Form 10 had not been prepared, prior time commitments made prior to Plaintiff joining the firm would in all likelihood not be timely achieved.

21      In December 1997, there were numerous meetings and presentations held to prepare the 1998 Corporate Vision for all employees and market. These presentations continued to confirm the spin. There was never indication or risk of the spin not occurring.

22.     On January 9, 1998, Mr. Coackley indicated in correspondence to the Plaintiff that the meeting for spin preparation with GS was held, and that issues remained on debt and option reserves. There was no indication or implication of the spin not occurring, just indication of small delays.

23      In or about January through February 1998, the Defendant Coackley's (GS) corporate attorneys for use in filings prepared affidavits, stipulating that it would not have been able to attract the talent necessary if there was not the commitment to the spin and the stock equity. Clearly, the use of these documents in the later Internal Revenue Service's filings indicates that it was understood and accepted that key executives, such as the Plaintiff had relied and to her detriment on this and continuing promises.

24.     On February 11, 1998, Plaintiff received correspondence from Defendant Coackley's outlining the outcome of the pre-submission conference with the Internal Revenue Service, and indicating that the meeting went well, and that the official application for the ruling had been formally released, indicating the GSN spin was "in play." Again, no indication of risk or change of plans.

25    On February 18 and 19, 1998, offsite meetings were held with senior executives and a facilitator. During this meeting it became clearly obvious to the Plaintiff and Management Team that a new formulation of stock issuance for the executives had been created, and this plan significantly conflicted from the original commitments. A new Chief Financial Officer (CFO) was present, and indicated his surprise that the executive staff was unfamiliar with this proposal, and he indicated his disfavor for the plan but confirmed knowledge of this plan since November 1997.   Further, the Plaintiff subsequently documented it to the designated lead, Mr. von Reichbauer, that the minutes provided on February 23, 1998 did not reflect accurately the significant issue on the stock commitment and the current proposal. No follow up was provided indicating a conflict to these noted discrepancies.

26.    On March 25, 1998, during an executive meeting, indication was made by Defendant Coakley that the stock distribution that was presented February 18 and 19, would be changed at minimum three times the options presented during that session. This offer, though improved, still lagged considerably the commitment made to the Plaintiff prior to the Plaintiff joining the company. Further, it was confirmed that the Form 10 would be changed. Once again, spin dates continued to delay.

27.    On April 23, 1998, the Defendant Coakley and the Plaintiff had a discussion in which previous offers of February 18 and 19 and March 25 were changed to now offer 100,000 options, at market price, with 5% available as a grant. The grant was offered to vest over two years, with the options vesting over a three to four year period.

6.

28.    The Plaintiff further corresponded with Defendant Coackley indicating this still was not consistent with the original offer. Though the offers changed in terms of perceived value, the exchanged again confirmed the promise of the equity position.

29.    On May 9, 1998, the Defendant Coackley indicated via correspondence that in another meeting with GSN new criteria for the spin was introduced. Prior to spin, it was critical that quarter over quarter showed a gain for the new unit. It was indicated that "the price for freedom" is a specified achievement for the second quarter of 1998. The spin is again delayed to allow for quarterly results to be published.

30.    In or about May till end of June 1998, the Plaintiff actively engaged her unit to ensure this financial goal, and in fact was a contributor to over-achieving the operating income for this quarter. Several staff meetings with Defendant Coackley again confirmed the new date of July and describing obligations of offers and directs to the stock of the new company.

31    On July 6, 1998, the *Network News*, an internal newspaper, signed by Defendant Coackley, stated a quote of "[a]lthough we have been working toward a July spin date, we decided to delay the date approximately a month so that second quarter results will be available."

32.    On July 7, 1998, in a letter to Defendant Coackley from the Plaintiff requesting written confirmation that the spin is still on target, with a "not to exceed" date and numerous other elements for clarification of compensation and stock.

33.    Correspondence back from Mr. Coackley indicated that he would not provide a commitment to no further delays. Further, for the first time, indication that there are "no assurances" on the date of the spin until the board of director's vote. This was inconsistent

7

with the contract and ongoing assurances, and left the belief that Defendant Coackley was not only unwilling to stand behind the contract, but was also indicating that the Defendant may have misrepresented his authority and position.

34.     Thereafter, after considerable consideration and attempts to question Defendant Coackley's correspondence, the Plaintiff had no recourse but to submit her resignation. It became obvious that Defendant Coackley was unwilling to satisfy his contracted agreement with the Plaintiff and that there now was considerable risk that a sale of the company had been another consideration, and one which Defendant Coackley had previous knowledge about. Further, given the contents of the July 7 correspondence, it became clear that Defendant Coackely was also not willing to protect the Plaintiff and her colleagues if a sale were to occur.

35.     On July 17, 1998, Defendant Coackley called the Plaintiff and told her to only stay until Tuesday, July 21, 1998 and requested her to rewrite her resignation letter and provide a new letter, which only indicated her desire to terminate with clarifications of reasons.

36.     On or about July 19, 1998, GS announces the sale of GS (inclusive of General Signal Networks) to SPX. Spin is cancelled.

37.     As can be seen for this history, there is a long list of events, correspondence and discussions in which the original agreement was made, ratified, confirmed and subsequently delayed. Over the period, the delivery within a reasonable amount of time on the agreement was not met, and the key committing individual, Defendant Coackley was fully aware that he could not fulfill this agreement or would he seek appropriate restitution for the time and contribution of key members of the executive staff.

8

38. That these matters above were continuing in nature and the Plaintiff's cause of action occurred on or between July 19, 1998 and July 24, 1998. In addition by Stipulation by the Parties, and ordered by United States District Court Judge Alvin K. Hellerstein on October 22, 1999, "All Statues of Limitation for any claims brought against the Corporate Defendants in this New York action shall be tolled as of the date of the filing of the Summons and Complaint."

39. That, upon information and belief, at all relevant times, the Defendants and their agents were authorized to exercise management authority with respect to their contracts and bind the other Defendants.

40. That upon information and belief, all of the relevant acts and occurrences occurred in the State of Massachusetts.

41. Jurisdiction of this Court and the Defendants herein is proper to the Defendants' places of business, and the amount in controversy exceeds $25,000.00.

## AS AND FOR A FIRST CLAIM

42. The Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth at length.

43. That this claim of action is against all of the Defendants or any successor company for breach of contract.

44. That, at all relevant times herein, the Defendant Coackley did act and possessed the actual, implied, or apparent authority or agency to act on behalf of, to bind, and to exercise management authority over the defendant GSN, the defendant GS and Defendant Inrange.

9

45.     The Plaintiff and the Defendants, by and through their authorized agents had a binding and valid contract, and the contract contained the material elements, including sufficient consideration and there was a clear meeting of the minds and enforceable oral contract.

46.     That commencing in or about June, 1997 and continuing into July 1998, the Defendant Coackley, on behalf of himself and the Defendants GS and GSN offered to and accepted by Plaintiff with sufficient consideration at the time of the making of such agreement, common stock in the successor to the Defendant GSN in an amount equal to 5/8 of 1% of said successor company.

47.     This and the other representations were not conditioned on any other event.

48.     That the Plaintiff and the Defendants GS and GSN entered into and/or ratified said oral agreement in or about June, 1997.

49.     That the contract between Plaintiff Aretakis and the Defendants GS and GSN, pursuant to which the Plaintiff would own a 5/8 of 1% of equity/stock in the company to be "spun off" was oral, contained sufficient consideration at the time of the making of the contract, was a material part of the agreement and was relied upon by the Plaintiff to her detriment.

50.     By communication in October, 1997 between Plaintiff and the Defendant Coakley, the Defendants GS and GSN breached said contract and refused to continue to perform the conditions of the contract on the part of the Defendants GS and GSN to be performed with respect to the Plaintiff.

51     That said contract was performed by Plaintiff and the Defendants GS and GSN until the contract was breached and/or repudiated by Defendants GS and GSN.

52.     That, as the purchaser of the stock and assuming the assets, obligations and liabilities of the Defendant GS with respect to the ownership of Defendant GSN, the Defendant SPX and/or Inrange are also responsible to Plaintiff Aretakis for the breach of the contract between the Plaintiff Aretakis and the Defendants GS and GSN and the results or consequences of such breach.

53.     That as the resulting successor company to the defendant GSN, the defendant Inrange is also responsible to the Plaintiff Aretakis for the breach of the contract between the Plaintiff Aretakis and the Defendants GS and GSN.

54.     That the Plaintiffs were damaged by said acts of the Defendants and the Defendants are unjustly enriched by the actions of the Defendants.

55.     Up to and including the time of the Defendants' repudiation and breach, the Plaintiff Aretakis was ready, willing and able to continue performance of the contract.

### AS AND FOR A SECOND CLAIM

56.     The Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth at length.

57.     That this claim of action is against all of the Defendants or any successor company for promissory and/or equitable estoppel.

58.     That Defendant Coakley, the President of Defendant GSN has or had, at all relevant times, the actual, implied, or apparent authority or agency to make the contract and agreement herein described on behalf of, and to bind, the Defendants GS, GSN and related companies.

59.     That said agreement between the Plaintiff Aretakis and the Defendants GS and GSN was a material inducement with sufficient consideration causing the Plaintiffs to take

certain actions, including without limitation, the resignation by the Plaintiff Aretakis of her long-time position with Siemens Corporation, moving the family from Florida to Massachusetts and the sale by the Plaintiff Svirk of certain businesses in Florida.

60.     That in reliance of the promises, agreements and representations made and actions and conduct taken by Defendant Coakley, the Plaintiff Aretakis left her position as Vice President of Siemens Corporation in Boca Raton, Florida and accepted her position as General Manager/Vice President of Defendant GSN'S Tautron Division, which was at all relevant times, operated and located in Westford, Massachusetts.

61      That in such reliance, the Plaintiffs, relocated their home, two minor children, family and possessions from Boca Raton, Florida to Chelmsford, Massachusetts.

62.     That but for the specific contract, and the promises, agreements and representations made by Defendant Coackley, the Plaintiff Aretakis would not have accepted a position with Defendant GSN and relocated her family to Massachusetts and caused her husband, the Plaintiff Svirk, to sell certain businesses, cease other certain business operations and forego other business opportunities in Florida, and to conduct other business matters occurring in Florida from Massachusetts.

63.     That despite significant efforts by Siemens Corporation to retain Plaintiff, the Plaintiff after receiving confirmation of the contract by Defendant Coackley of her agreement to become a 5/8 of 1% stockholder in the company to be "spun off" from Defendant GS, accepted her position with Defendant GSN.

64.     That, in further reliance of said agreement, the Plaintiffs purchased a home in Chelmsford, Massachusetts and relocated their family and belongings to Massachusetts.

65    That, despite the performance of the agreement and actions taken by the Plaintiff in reliance of said agreement, the Defendants failed to perform their obligations under said agreement and thereby breached or anticipatorily breached the terms of said agreement.

### AS AND FOR A THIRD CLAIM

66.    The Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth at length.

67.    That this claim of action is against Defendants or any successor company for deceptive practices under Chapter 93A of the Massachusetts General Law.

68    That through a recruiting firm and personally, the Defendant Coackley, on behalf of himself and the Defendants GS and GSN, conducted unfair and deceptive practices with respect to the Plaintiff; to wit, undertaking considerable efforts to convince the Plaintiff to resign from her long-standing position with Siemens Corporation, accept a position with the Defendant GSN, relocate her family from Florida to Massachusetts and cause her husband, the Plaintiff Svirk, to sell certain businesses, cease certain businesses, forego certain business opportunities by agreeing to provide the Plaintiff with stock grants in the "spin off" company equal to 5/8 of 1% if she accepted the position offered to her by the Defendant GSN.

69.    That through said recruiting firm and personally to Plaintiff and others, the Defendant Coakley, on behalf of himself and the Defendants GS and GSN, offered to Plaintiff Aretakis and others an interest in a commercial transaction, to wit, stock interest in the "spin off" company of the Defendant GSN.

70.    That but for the actions, representations and offer of the Defendant Coakley, on behalf of himself and the Defendants GS and GSN, Inrange or any successor companies, the Plaintiff would not have, terminated her then employment and accepted the position with the

13

Defendant GS and the Plaintiffs would not have relocated their family from Florida to Massachusetts and divested themselves from certain business opportunities and transactions as herein described.

71      The Defendant Coakley, on behalf of himself and the Defendants GS and GSN, represented to the Plaintiff Aretakis that the value of the 5/8 of 1% of stock in the "spin off" company would be worth $2.5 Million.

72.     The Defendant, Coakley, on behalf of himself and the Defendants GS and GSN advised the Plaintiff Aretakis that the grants of stocks to be given to the Plaintiff Aretakis were also given to seven other employees of the defendant GSN, totaling a 5% equity stake by all such employees in the "spin off" company.

73.     The defendant Coakley, on behalf of himself and the Defendants GS and GSN, described the grant of stock to the Plaintiff Aretakis as a "no risk" proposition to the Plaintiff.

74.     The Defendant Coakley, on behalf of himself and the Defendants GS and GSN, to further induce her to accept the position offered to her with the Defendant GSN, advised her that the monetary value of the Aretakis' stock grants and other employees stock grants had been discussed with the investment bankers engaged by the Defendant GSN for a long period of time.

75.     The agreements and representations made to the Plaintiff Aretakis by the Defendant Coakley, on behalf of himself, and the Defendants GS and GSN, were key factors and material inducements in her decision to, among other things, resign from her longstanding position with Siemens Corporation, accept a position with the defendant GSN, relocate her family from Florida to Massachusetts and cause her husband, the Plaintiff Svirk, to sell certain businesses, cease certain businesses, and forego certain business opportunities in Florida.

14

76    That but for those representations made by the Defendant Coakley, on behalf of himself and the Defendants GS and GSN, and the agreements between the Plaintiff Aretakis and the Defendant Coakley, on behalf of himself and the Defendants GS and GSN, the, Plaintiff Aretakis would not have resigned from her long-standing position with Siemens Corporation, accepted the position with the defendant GSN, relocated her family from Florida to Massachusetts and caused her husband, the Plaintiff Svirk, to sell certain businesses, cease certain businesses, forego certain business opportunities.

77.    At the time of the making of all representations and agreements herein referred to, the Defendant Coakley was the President of the Defendant GSN, the entity to be "spun off" and was in the best position to know about the details of the "spin off", the timing of the "spin off", the grant of stock and the value of the stock the Plaintiff Aretakis was to receive.

78.    That when the Plaintiff Aretakis advised Siemens Corporation that she considered leaving the company to accept the position and other benefits offered by the Defendant Coakley, on behalf of himself and the Defendants GS and GSN, Siemens Corporation provided her with a lucrative counter-offer.

79.    That the Plaintiff Aretakis advised the Defendant Coakley and another employee of the Defendant GSN of the terms of said counter-offer and, at that time, the Plaintiff was given reassurances by the Defendant Coakley and said other employee of the Defendant GSN that the "spin off" would occur in the summer of 1997 and that the grant of stock to the Plaintiff Aretakis would equal at least $2.5 Million.

80.    Based upon said continual representations and agreements made by the Defendant Coakley, on behalf of himself and the Defendants GS and GSN, the Plaintiff Aretakis, turned down the counter-offer presented to her by Siemens Corporation, resigned

from her long-standing position with Siemens Corporation, accepted the position and benefits offered to her by the Defendant GSN, accepted the stock grants in the "spin off company offered to her by the Defendant GSN, relocated her family from Florida to Massachusetts, purchased a home in Chelmsford, Massachusetts, and caused her husband, the Plaintiff Svirk, to sell certain businesses, cease certain businesses, and forego certain business opportunities in Florida.

81    That the Defendant committed deceptive acts, commercial and contractual breaches and proximately damaged the Plaintiffs.

82.    That the Defendant's deceptive acts as above described could be reasonably found to have caused the Plaintiff Aretakis to act differently from the way she otherwise would have acted.

83.    That a written demand under Chapter 93A of the Massachusetts General Law was made on the Defendant GS pursuant to a letter dated July 24, 1998.

84.    That, upon information and belief, the Defendant GS never responded to said demand.

85.    That the Plaintiffs respectfully request treble damages, attorney's fees, costs and all other damages permitted by said Statute.

## AS AN FOR A FOURTH CLAIM

86.    The Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth at length.

87.    That this claim of action is against Defendants for fraud.

16

88.   That the Defendant Coakley, on behalf of himself and the Defendants GS and GSN made a contract with the Plaintiff and made representations to the Plaintiff confirming her 5/8% of 1% of stock/equity in the company to be "spun off" from the Defendant GS.

89.   That the Defendant Coackley, on behalf of himself and the Defendants GS and GSN, continually made the representation to the Plaintiff Aretakis that the "spin off" would occur in the summer of 1997.

90.   That the Plaintiff Aretakis discovered that the Defendants Coakley, GS and GSN failed to prepare the Form 10 and other documents required for the "spin off" to meet the summer 1997 "spin off" schedule.

91.   That the Defendant Coakley, on behalf of himself and the Defendants GS and GSN, continually made the representation to the Plaintiff Aretakis through the summer of 1997 and thereafter through the summer of 1998 that there was never any doubt that the "spin off" would occur.

92.   That after making repeated representations and confirmation of the agreement arrived at in June, 1997, the Defendant Coakley, on behalf of himself and the Defendants GS and GSN, "presented to the Plaintiff Aretakis and others and offered a plan for the award of 32,000 stock options at market price, rather than the stock grant the Plaintiff Aretakis and others had agreed to".

93.   That misrepresentations by the Defendants Coakley, GS and GSN that the "spin off" would occur in the summer of 1997 was deliberate misrepresentation of fact to induce the Plaintiff Aretakis to resign from her long-standing position with Siemens Corporation, accept a position with the defendant GSN, relocate her family from Florida to Massachusetts and cause her husband, the Plaintiff Svirk, to sell certain businesses, cease certain businesses, forego

certain business opportunities and conduct certain Florida-based businesses from Massachusetts.

94. That Defendant Coakley, then President of Defendant GSN and thereafter President of Defendant Inrange, has had at all relevant times actual, implied or apparent authority or agency to make contracts and agreements on behalf of, and to bind, Defendants GS and GSN and related companies.

95. That Defendant Coakley made an oral and material contract and representation to the Plaintiff including that the Plaintiff had an equity/shareholder interest in the successor to the Defendant GSN.

96. That the material fraudulent representations were made by the Defendant Coakley on or from April, 1997 and continued through July 1998 at his office and principal place of business.

97. That the Defendant Coakley and the Defendants GS and GSN made the above oral and material representation to the Plaintiff which they at the time, knew were false.

98. That the Defendants Coakley, GS and GSN knew the Plaintiff relied on such material representation made by the Defendants.

99. That the Plaintiff relied to her detriment on the material representations made by the Defendant Coakley.

100. The Plaintiff worked tirelessly and productively to successfully increase sales, which contributed to the sale of the company, but she was duped into it by Defendant Coackley and other Defendants into thinking whe was helping the spin.

101. That the Defendant Coakley made such fraudulent representations to the Plaintiff, knowing said representations to be false when made, and made same with the intent to deceive

18

and defraud the Plaintiff and to induce the Plaintiff to resign from her long-standing position with Siemens Corporation, accept a position with the defendant GSN, relocate her family from Florida to Massachusetts and cause her husband, the Plaintiff Svirk, to sell certain businesses, cease certain businesses, and forego certain business opportunities in Florida and to continue to work at the defendant GSN to bolster the company for the "spin off" or eventual sale of the company.

102.   That the Defendant Coakley made such oral representations to the Plaintiff with the actual, apparent or implied authority or agency of the Defendants GS and GSN and these Defendants are responsible for such fraudulent representation.

103.   That Defendant Coakley acted for personal profit and such fraudulent acts resulted in personal gain in favor of Defendant Coakley and other Defendants; to wit, the Defendant Coakley's position with the Defendant Inrange and the Defendants Inrange's and SPX'S assumption of all debt of the Defendant GSN.

104.   That the Plaintiff was proximately damaged thereby and respectfully requests an appropriate amount of compensatory damages and punitive damages.

WHEREFORE, the Plaintiffs respectfully request:

1)   $2,500,000.00 with respect to the first and second claims;

2)   $2,750,000.00 with respect to the third and fourth claims;

3)   Treble damages and attorney's fees with respect to the third claims;

4)   All damages allowable by Massachusetts Statute;

5)   An appropriate amount of punitive damages for the intentional and fraudulent acts of the Defendants; and

6)     For such other further and different relief or alternative remedies that this Court

deems just and proper.

DATED:      NEW YORK, NEW YORK
            JULY 14, 2004

JOHN A. ARETAKIS, ESQ.
Attorney for Plaintiffs
EVANTHIA C. ARETAKIS and
CHARLES F. SVIRK, JR.
353 East 54th Street
New York, New York 10022-4965
(212) 751-7853
Facsimile (518) 286-3065

KENNETH Z. GORDON, ESQ., BBO #556762
Local Counsel for Plaintiff
EVANTHIA C. ARETAKIS and
CHARLES F. SVIRK, JR.
63 Chatham Street
Boston, MA 02109
(617) 742-4602

TO:     FRIED FRANK HARRIS SHRIVER & JACOBSON
        One New York Plaza
        New York, New York 10004
        (212) 859-8000

20

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) _Aretakis v General Signal, Inc._

2.  CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET.  (SEE LOCAL RULE 40.1(A)(1)).

___     I.     160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

___     II.    195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,          *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

_X_    III.   110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

___    IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

___    V.     150, 152, 153.

3.  TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)).  IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

_____

4.  HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

                                                    YES          (NO)

5.  DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST?   (SEE 28 USC §2403)

                                                    YES          (NO)

    IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

                                                    YES          NO

6.  IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

                                                    YES          (NO)

7.  DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)). _None of the parties resides in Mass._
                                                    YES          NO

    A.  IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

        EASTERN DIVISION          CENTRAL DIVISION          WESTERN DIVISION

    B.  IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING
        GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

        EASTERN DIVISION          CENTRAL DIVISION          WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  _Jeffrey L. Levy, Corrigan & Levy LLP_
ADDRESS  _896 Beacon St. Boston, MA 02215_
TELEPHONE NO.  _(617) 247-3800_

(Cover sheet local.wpd - 11/27/00)

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I.(a) PLAINTIFFS

Evanthia C. Acetakis and
Charles F. Svick, Jr.

**DEFENDANTS** General Signal, Inc., General
Signal Networks, Inc., SPX Corp,
Exchange Technologies, Corp., Robert
Coackley, "John Doe," and "Jane Doe."

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  New Hampshire
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Kenneth I. Gordon
63 Chatham St.
Boston, MA 02109

ATTORNEYS (IF KNOWN) Jeffrey L. Levy
Corrigan & Levy LLP, 896 Beacon St.,
Boston, MA 02215
(617) 247-3800

## II. BASIS OF JURISDICTION    (PLACE AN "X" IN ONE BOX ONLY)

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties
in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

☐ 1  Original
Proceeding

☒ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
another district
(specify)

☐ 6  Multidistrict
Litigation

☐ 7  Appeal to District
Judge from
Magistrate
Judgment

## V. NATURE OF SUIT    (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** ☐ 310 Airplane | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | **PERSONAL INJURY** ☐ 362 Personal Injury — Med. Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS — Third Party 26 USC 7809 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION    (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Plaintiffs allege breach of contract to provide them with a certain percentage of stock of one of the defendant corporations, and related claims for fraud and violation of M.C.L. c.93A. There is complete diversity pursuant to 28 USC 1332

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $2,500,000    CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ YES  ☒ NO

## VIII. RELATED CASE(S)    (See instructions):
IF ANY

JUDGE _____    DOCKET NUMBER _____

DATE  2/9/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____