**L C**

Corrigan & Levy LLP | Boston

FILED
IN CLERKS OFFICE

2005 FEB 15 P 12: 38

U.S. DISTRICT COURT
DISTRICT OF MASS

February 14, 2005

Clerk
United States District Court
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

　Re:　*Aretakis, et al. v. General Signal, Inc., et al.*, C.A. No. 05-10257 DPW

Dear Sir or Madam:

Pursuant to Local Rule 81.1(a), I enclose certified copies of the Superior Court
file in this removed matter.

If you have any questions, please call me.　Thank you for your attention to this
matter.

Very truly yours,

Jeffrey L. Levy
jeff@corriganlevy.com

JLL/mof
Enclosures

cc:　T.J. Conley, Esq.

**p** 617-247-3800
**f** 617-867-9224
**w** corriganlevy.com

896 Beacon Street
Boston, MA 02215

*Suffolk Superior Civil # 04-3127*



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS,

EVANTHIA C. ARETAKIS and
CHARLES F. SVIRK, JR.,

Plaintiffs,

v.

GENERAL SIGNAL, INC., GENERAL
SIGNAL NETWORKS, INC., SPX CORP.,
INRANGE TECHNOLOGIES CORP.,
ROBERT COACKLEY, "JOHN DOE" and
"JANE DOE,"

Defendants.

Civil Action No.

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441, defendant Inrange Technologies

Corp. ("Inrange") hereby removes the above-captioned action to the United States District Court

for the District of Massachusetts. In support of this removal, Inrange states as follows:

1.     On January 12, 2005, Inrange was served with a Summons and Complaint (the

"Complaint"), a copy of which is attached hereto as Exhibit A. The Complaint was captioned in

the Superior Court of Suffolk County, Commonwealth of Massachusetts, and was titled *Evanthia*

*C. Aretakis, et al. v. General Signal, Inc., et al.*, C.A. No. 2004-3127. The Summons and

Complaint constitute all process, pleadings, and orders served upon Inrange to date in this action.

2.     The plaintiffs allege in their Complaint that they are residents of the State of New

Hampshire.

3.     Inrange is a Delaware corporation with its principal place of business in

Plymouth, Minnesota. Prior to changing its name to Inrange Technologies Corp. in 1998,

WHEREFORE, Inrange respectfully requests that the above action now pending in the Superior Court, Suffolk County, Commonwealth of Massachusetts, be removed to the United States District Court for the District of Massachusetts.

INRANGE TECHNOLOGIES CORP.

By its attorneys,

Jeffrey L. Levy (BBO# 559438)
CORRIGAN & LEVY LLP
896 Beacon Street
Boston, Massachusetts 02215
(617)247-3800

**I HEREBY ATTEST AND CERTIFY ON**
**FEB. 14, 2005, THAT THE**
**FOREGOING DOCUMENT IS A FULL,**
**TRUE AND CORRECT COPY OF THE**
**ORIGINAL ON FILE IN MY OFFICE,**
**AND IN MY LEGAL CUSTODY.**

**MICHAEL JOSEPH DONOVAN**
**CLERK / MAGISTRATE**
**SUFFOLK SUPERIOR CIVIL COURT,**
**DEPARTMENT OF THE TRIAL COURT**

**BY**

**ASSISTANT CLERK.**

Of counsel:

T.J. Conley
LEONARD, STREET AND DEINARD
PROFESSIONAL ASSOCIATION
150 South Fifth Street, Suite 2300
Minneapolis, Minnesota 55402
(612) 335-1500

Dated:   February 9, 2005.

### Certificate of Service

I hereby certify that on February 9, 2005, I caused a copy of this document to be served on counsel for the plaintiffs, Kenneth I. Gordon, Esq., 63 Chatham Street, Boston, MA 02109 by first class mail.

Jeffrey L. Levy

3

MAS-20030912
Quen

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

02/10/2005
03:04 PM

FILED
IN CLERKS OFFICE

## SUCV2004-03127
### Aretakis v General Signal Inc et al

2005 FEB 15 P 12: 39

U.S. DISTRICT COURT
DISTRICT OF MASS

| | | | | | | |
|---|---|---|---|---|---|---|
| **File Date** | 07/14/2004 | **Status** | Disposed: transfered to other court (dtrans) | | | |
| **Status Date** | 02/10/2005 | **Session** | G - Civil G | | | |
| **Origin** | 1 | **Case Type** | A99 - Misc contract | | | |
| **Lead Case** | | **Track** | F | | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 10/12/2004 | **Answer** | 12/11/2004 | **Rule12/19/20** | 12/11/2004 |
| **Rule 15** | 12/11/2004 | **Discovery** | 05/10/2005 | **Rule 56** | 06/09/2005 |
| **Final PTC** | 07/09/2005 | **Disposition** | 09/07/2005 | **Jury Trial** | Yes |

**Plaintiff**
Evanthia C Aretakis
Active 07/14/2004

**Private Counsel 556762**
Kenneth I Gordon
Hogan & Gordon
63 Chatham Street
3rd floor
Boston, MA 02109
Phone: 617-742-4602
Fax: 617-742-1506
Active 07/14/2004 Notify

**Defendant**
General Signal Inc
Dismissed under time standards 11/09/2004

**Defendant**
GeneralSignal Networks Inc
Served: 01/12/2005
Served (answr pending) 01/25/2005

**Defendant**
Spx Corp
Served: 01/12/2005
Served (answr pending) 01/25/2005

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

02/10/2005
03:04 PM

## SUCV2004-03127
## Aretakis v General Signal Inc et al

| | |
|---|---|
| **Defendant**<br>Inrange Technologied Corp<br>Served: 01/12/2005<br>Served (answr pending) 01/25/2005 | **Private Counsel 559438**<br>Jeffrey L Levy<br>Corrigan & Levy LLP<br>896 Beacon Street<br>Boston, MA 02215<br>Phone: 617-247-3800<br>Fax:<br>Active 02/10/2005 Notify |
| **Defendant**<br>Robert  Coackley<br>Dismissed under time standards 11/09/2004 | |
| **Defendant**<br>John  Doe<br>Dismissed under time standards 11/09/2004 | |
| **Defendant**<br>Jane  Doe<br>Dismissed under time standards 11/09/2004 | |
| **Out-of-state attorney**<br>Evantia C  Aretakis<br>3534 East 54th Street<br>New York, NY 10022-4965<br>Phone: 212-751-7853<br>Active 08/05/2004 Notify | |
| **Out-of-state attorney**<br>Jeffrey L.  Conley<br>150 South Fifth Street Suite 230<br>Minneapolis, MN 55402<br>Phone: 612-335-1500<br>Active 02/10/2005 | |

MAS-20030912

juen

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

02/10/2005
03:04 PM

## SUCV2004-03127
## Aretakis v General Signal Inc et al

| Date | Paper | Text |
|------|-------|------|
| 07/14/2004 | 1.0 | Complaint & Jury demand |
| 07/14/2004 | | Origin 1, Type A99, Track F. |
| 07/14/2004 | 2.0 | Civil action cover sheet filed |
| 07/16/2004 | 3.0 | Plaintiff Evanthia C Aretakis's MOTION for appointment of special process server Suvalle, Jodrey |
| 07/16/2004 | 4.0 | Plaintiff Evanthia C Aretakis's MOTION to admit John A. Aretakis, Esq. as counsel pro hac vice for Evanthia C Aretakis w/o opposition |
| 07/16/2004 | 5.0 | Affidavit of John A. Aretakis in support of Motion for Admission Proc hac Vice |
| 08/05/2004 | | MOTION (P#3) ALLOWED (Carol S. Ball, Justice) (Dated 8/3/04) Notices mailed August 03, 2004 |
| 08/05/2004 | | MOTION (P#4) ALLOWED (Carol S. Ball, Justice) (Dated 8/3/04) Notices mailed August 03, 2004 |
| 11/09/2004 | 6.0 | JUDGEMENT OF DISMISSAL re: General Signal Inc; GeneralSignal Networks Inc; Spx Corp; Inrange Technologied Corp; Robert Coackley; John Doe; Jane Doe (w/o prejudice; service not complete by 1-88 deadline).□Copies mailed. |
| 11/09/2004 | | Case status changed to 'Disposed: dismissd/no service' at service deadline review |
| 12/20/2004 | 7.0 | Motion of plffs to remove dismissal under standing order 1-88 and to enlarge time for service to & including March 31, 2004 (w/o opposition) |
| 12/30/2004 | | MOTION (P#7) ALLOWED - however services of the summons & complaint must be accomplished by Feb 18,2005 (Henry, Justice) Notices mailed December 29, 2004 (entered 12/27/04) |
| 12/30/2004 | 8.0 | Request to change data base information - Service 2/18/05 (Billings,J) notice sent 12/29/04 (entered 12/28/04) |
| 01/25/2005 | 9.0 | SERVICE RETURNED: Inrange Technologied Corp(Defendant) (In hand to Ms Lisa Mogan) |
| 01/25/2005 | 10.0 | SERVICE RETURNED: Spx Corp(Defendant) (In hand to Ms. Yvette Concepcion) |
| 01/25/2005 | 11.0 | SERVICE RETURNED: GeneralSignal Networks Inc(Defendant) (In hand to Ms Lisa Mogan) |
| 02/10/2005 | | Certified copy of petition for removal to U. S. Dist. Court of Deft. Inrange Technologies Corp U. S. Dist.#(05-CV-10257DPW). |
| 02/10/2005 | | Case REMOVED this date to US District Court of Massachusetts |

- HEREBY ATTEST AND CERTIFY ON

FEB. 14, 2005 , THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK.

FILED
IN CLERKS OFFICE          1

COMMONWEALTH OF MASSACHUSETTS 5 P 12: 38

SUFFOLK, S.S.

SUPERIOR COURT
CIVIL ACTION NO.

04-3127 G

| | |
|---|---|
| EVANTHIA C. ARETAKIS and<br>CHARLES F. SVIRK, JR.,<br>                     Plaintiffs,<br><br>    -v.-<br><br>GENERAL SIGNAL, INC., GENERAL SIGNAL<br>NETWORKS, INC., SPX CORP., INRANGE<br>TECHNOLGIES CORP., ROBERT COACKLEY,<br>"JOHN DOE" and "JANE DOE",<br>                     Defendants. | **COMPLAINT AND<br>JURY TRIAL DEMAND** |

1. The Plaintiffs, EVANTHIA C. ARETAKIS and CHARLES F. SVIRK, JR. (hereinafter collectively referred to as the "Plaintiffs" and individually referred to as "Aretakis" and "Svirk", respectively) by their attorney, John A. Aretakis, Esq. and local counsel Kenneth Gordon, Esq., as and for their Complaint, herein respectfully allege upon information and belief as follows:

## PARTIES AND JURISDICTION

2.    That the Plaintiff Evanthia C. Aretakis (hereinafter "Plaintiff"), at all relevant times herein, resided in the Commonwealth of Massachusetts, and now resides in Hollis, New Hampshire.

3.    That the Plaintiff Charles F. Svirk (hereinafter "Plaintiff"), at all relevant times herein resided in the Commonwealth of Massachusetts, and now resides in Hollis, New Hampshire.

4.    That the defendant General Signal, Inc. (hereinafter "GS") is a corporation and that, upon information and belief, is licensed to do business in the Commonwealth of

Massachusetts and has an office for the transaction of business in the Commonwealth of Massachusetts.

5.     That defendant General Signal Networks, Inc. (hereinafter "GSN") is corporation and that upon information and belief, is licensed to do business in the Commonwealth of Massachusetts and has an office for the transaction of business in the Commonwealth of Massachusetts.

6.     That the defendant SPX Corp. (hereinafter "SPX") is a corporation, and that, upon information and belief, is licensed to do business in the Commonwealth of Massachusetts, and has an office for the transaction of business in the Commonwealth of Massachusetts.

7.     That the defendant Inrange Technologies Corp. (hereinafter "Inrange") is a corporation, and that, upon information and belief, is licensed to do business in the Commonwealth of Massachusetts and has an office for the transaction of business in the Commonwealth of Massachusetts.

8.     That, upon information and belief, the defendant SPX has acquired the stock and assumed the assets, obligations and liabilities of the defendant GS with respect to the ownership of defendant GSN.

9.     That, upon information and belief, the defendant Inrange, or any company or entity that purchases or succeeds Inrange is the resulting company after the acquisition by the defendant SPX of the stock, assets, obligations and liabilities of the defendant GS with respect to the ownership of defendant GSN.

10.     That the Defendant Robert Coackley (hereinafter "Coakley") was, upon information and belief, a resident of the State of New Jersey and/or California.

2

11.    That, upon information and belief, the Defendant Coackley was, at all relevant times, the President of the defendant GSN and was, upon information and belief, the President of the Defendant Inrange and had the authority to act on their behalf, and that all relevant contracts and agreements occurred in the State of Massachusetts.

12.    That Defendant GSN was, at all relevant times, a division and wholly owned subsidiary of the Defendant GS.

13.    That, upon information and belief, the Defendant GS, as the parent company of the Defendant GSN, at all relevant times owned the assets and assumed the obligations and liabilities of the Defendant GSN.

14.    That, upon information and belief, the Defendant Inrange (successor to the Defendant GSN) is a wholly owned subsidiary of the Defendant SPX.

15.    That, upon information and belief, the Defendant GSN, is or was, at all relevant times, a subsidiary of Defendant GS transacting business in New York State, with offices at 90 West Street, Suite 1908, City and County of New York, State of New York, and upon information and belief, in Massachusetts.

16.    In December 1996, Christian and Timbers, an executive search firm, contacted the Plaintiff on behalf of GSN, a subsidiary of GS. A search had been initiated to find a General Manager for the GSN unit in Westford, Massachusetts. At this point, Siemens had employed the Plaintiff for a little more than twelve years. The search firm confirmed the intention of this unit to spin off from the parent company and that the position would involve an equity position in the new company.

17.    In or about January 1997 through April 1997, there were numerous conversations around the expectation for an immediate spin off of GSN from the parent

company GS. Robert Coackly and GSN Human Resource Vice President stated that the spin off was "imminent" and value of stock to be granted to GSN General Managers would be in the approximately $2,500,000.00 (representation was made that 20,000,000.00 shares outstanding, of which 5% would be granted to the Management team, and this represented 5/8 of 1% to Plaintiff) and valuation was represented on a value base of $20 per share in two years which would yield the estimated valuation of $2,500,000.00). These conversations were confirmed with the GSN Vice President of Human Resources, Mr. Bill von Reichbauer. An oral contract was entered into by and between the parties for the exact and specific shares.

18.    On June 6, 1997, an offer letter from GSN was received by the Plaintiff and signed indicating a start date of July 7, 1997. The Plaintiff was requested to begin immediately as the spin off of the company would be happening very quickly and required the management team to be in place. The Plaintiff would forego Siemens' bonuses money, and related salary and benefit components, which would have required staying with the company until end of September. The Plaintiff accepted the Defendants' offer on July 7, 1997.

19.    In or about July through September 1997, there were numerous discussions and correspondence exchanged between the Plaintiff and Defendants GSN, Coackley, etc., which indicated that 1998 budgeting assumptions for the Plaintiff's unit as well as the other units would include costs of the spin, and continuous confirmation of spin.

20.    During this period, it became obvious to the Plaintiff and her colleagues that Mr. Coackley's original commitment of the spin for August 1997 was or could be impossible to achieve timely. The Form 10 had not been prepared and there were no formal documents filed with the Securities Exchange Commission (SEC) on the pending spin. The Plaintiff and

4

her colleagues raised these concerns in numerous staff meetings at which time indications of delays were provided. It was a major concern at this time that, given the Form 10 had not been prepared, prior time commitments made prior to Plaintiff joining the firm would in all likelihood not be timely achieved.

21.    In December 1997, there were numerous meetings and presentations held to prepare the 1998 Corporate Vision for all employees and market. These presentations continued to confirm the spin. There was never indication or risk of the spin not occurring.

22.    On January 9, 1998, Mr. Coackley indicated in correspondence to the Plaintiff that the meeting for spin preparation with GS was held, and that issues remained on debt and option reserves. There was no indication or implication of the spin not occurring, just indication of small delays.

23.    In or about January through February 1998, the Defendant Coackley's (GS) corporate attorneys for use in filings prepared affidavits, stipulating that it would not have been able to attract the talent necessary if there was not the commitment to the spin and the stock equity. Clearly, the use of these documents in the later Internal Revenue Service's filings indicates that it was understood and accepted that key executives, such as the Plaintiff had relied and to her detriment on this and continuing promises.

24.    On February 11, 1998, Plaintiff received correspondence from Defendant Coackley's outlining the outcome of the pre-submission conference with the Internal Revenue Service, and indicating that the meeting went well, and that the official application for the ruling had been formally released, indicating the GSN spin was "in play." Again, no indication of risk or change of plans.

25.    On February 18 and 19, 1998, offsite meetings were held with senior executives and a facilitator.  During this meeting it became clearly obvious to the Plaintiff and Management Team that a new formulation of stock issuance for the executives had been created, and this plan significantly conflicted from the original commitments.  A new Chief Financial Officer (CFO) was present, and indicated his surprise that the executive staff was unfamiliar with this proposal, and he indicated his disfavor for the plan but confirmed knowledge of this plan since November 1997.    Further, the Plaintiff subsequently documented it to the designated lead, Mr. von Reichbauer, that the minutes provided on February 23, 1998 did not reflect accurately the significant issue on the stock commitment and the current proposal.  No follow up was provided indicating a conflict to these noted discrepancies.

26.    On March 25, 1998, during an executive meeting, indication was made by Defendant Coakley that the stock distribution that was presented February 18 and 19, would be changed at minimum three times the options presented during that session.  This offer, though improved, still lagged considerably the commitment made to the Plaintiff prior to the Plaintiff joining the company.  Further, it was confirmed that the Form 10 would be changed.  Once again, spin dates continued to delay.

27.    On April 23, 1998, the Defendant Coakley and the Plaintiff had a discussion in which previous offers of February 18 and 19 and March 25 were changed to now offer 100,000 options, at market price, with 5% available as a grant.  The grant was offered to vest over two years, with the options vesting over a three to four year period.

6

28.     The Plaintiff further corresponded with Defendant Coackley indicating this still was not consistent with the original offer.  Though the offers changed in terms of perceived value, the exchanged again confirmed the promise of the equity position.

29.     On May 9, 1998, the Defendant Coackley indicated via correspondence that in another meeting with GSN new criteria for the spin was introduced.  Prior to spin, it was critical that quarter over quarter showed a gain for the new unit.  It was indicated that "the price for freedom" is a specified achievement for the second quarter of 1998.  The spin is again delayed to allow for quarterly results to be published.

30.     In or about May till end of June 1998, the Plaintiff actively engaged her unit to ensure this financial goal, and in fact was a contributor to over-achieving the operating income for this quarter.  Several staff meetings with Defendant Coackley again confirmed the new date of July and describing obligations of offers and directs to the stock of the new company.

31.     On July 6, 1998, the *Network News*, an internal newspaper, signed by Defendant Coakley, stated a quote of "[a]lthough we have been working toward a July 1 spin date, we decided to delay the date approximately a month so that second quarter results will be available."

32.     On July 7, 1998, in a letter to Defendant Coackley from the Plaintiff requesting written confirmation that the spin is still on target, with a "not to exceed" date and numerous other elements for clarification of compensation and stock.

33.     Correspondence back from Mr. Coackley indicated that he would not provide a commitment to no further delays.  Further, for the first time, indication that there are "no assurances" on the date of the spin until the board of director's vote.  This was inconsistent

with the contract and ongoing assurances, and left the belief that Defendant Coackley was not only unwilling to stand behind the contract, but was also indicating that the Defendant may have misrepresented his authority and position.

34.     Thereafter, after considerable consideration and attempts to question Defendant Coackley's correspondence, the Plaintiff had no recourse but to submit her resignation.    It became obvious that Defendant Coackley was unwilling to satisfy his contracted agreement with the Plaintiff and that there now was considerable risk that a sale of the company had been another consideration, and one which Defendant Coackley had previous knowledge about.    Further, given the contents of the July 7 correspondence, it became clear that Defendant Coackely was also not willing to protect the Plaintiff and her colleagues if a sale were to occur.

35.     On July 17, 1998, Defendant Coackley called the Plaintiff and told her to only stay until Tuesday, July 21, 1998 and requested her to rewrite her resignation letter and provide a new letter, which only indicated her desire to terminate with clarifications of reasons.

36.     On or about July 19, 1998, GS announces the sale of GS (inclusive of General Signal Networks) to SPX.  Spin is cancelled.

37.     As can be seen for this history, there is a long list of events, correspondence and discussions in which the original agreement was made, ratified, confirmed and subsequently delayed.  Over the period, the delivery within a reasonable amount of time on the agreement was not met, and the key committing individual, Defendant Coackley was fully aware that he could not fulfill this agreement or would he seek appropriate restitution for the time and contribution of key members of the executive staff.

8

38.    That these matters above were continuing in nature and the Plaintiff's cause of action occurred on or between July 19, 1998 and July 24, 1998. In addition by Stipulation by t he P arties, a nd o rdered b y U nited S tates D istrict C ourt Judge A lvin K . H ellerstein o n October 22, 1999, "All Statues of Limitation for any claims brought against the Corporate Defendants in this New York action shall be tolled as of the date of the filing of the Summons and Complaint."

39    That, upon information and belief, at all relevant times, the Defendants and their agents were authorized to exercise management authority with respect to their contracts and bind the other Defendants.

40,    That upon information and belief, all of the relevant acts and occurrences occurred in the State of Massachusetts.

41.    Jurisdiction of this Court and the Defendants herein is proper to the Defendants' places of business, and the amount in controversy exceeds $25,000.00.

### AS AND FOR A FIRST CLAIM

42.    The Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth at length.

43.    That this claim of action is against all of the Defendants or any successor company for breach of contract.

44.    That, at all relevant times herein, the Defendant Coackley did act and possessed the actual, implied, or apparent authority or agency to act on behalf of, to bind, and to exercise management authority over the defendant GSN, the defendant GS and Defendant Inrange.

9

45.     The Plaintiff and the Defendants, by and through their authorized agents had a binding and valid contract, and the contract contained the material elements, including sufficient consideration and there was a clear meeting of the minds and enforceable oral contract.

46.     That commencing in or about June, 1997 and continuing into July 1998, the Defendant Coackley, on behalf of himself and the Defendants GS and GSN offered to and accepted by Plaintiff with sufficient consideration at the time of the making of such agreement, common stock in the successor to the Defendant GSN in an amount equal to 5/8 of 1% of said successor company.

47.     This and the other representations were not conditioned on any other event.

48.     That the Plaintiff and the Defendants GS and GSN entered into and/or ratified said oral agreement in or about June, 1997.

49.     That the contract between Plaintiff Aretakis and the Defendants GS and GSN, pursuant to which the Plaintiff would own a 5/8 of 1% of equity/stock in the company to be "spun off" was oral, contained sufficient consideration at the time of the making of the contract, was a material part of the agreement and was relied upon by the Plaintiff to her detriment.

50.     By communication in October, 1997 between Plaintiff and the Defendant Coackley, the Defendants GS and GSN breached said contract and refused to continue to perform the conditions of the contract on the part of the Defendants GS and GSN to be performed with respect to the Plaintiff.

51.     That said contract was performed by Plaintiff and the Defendants GS and GSN until the contract was breached and/or repudiated by Defendants GS and GSN.

52.    That, as the purchaser of the stock and assuming the assets, obligations and liabilities of the Defendant GS with respect to the ownership of Defendant GSN, the Defendant SPX and/or Inrange are also responsible to Plaintiff Aretakis for the breach of the contract between the Plaintiff Aretakis and the Defendants GS and GSN and the results or consequences of such breach.

53.    That as the resulting successor company to the defendant GSN, the defendant Inrange is also responsible to the Plaintiff Aretakis for the breach of the contract between the Plaintiff Aretakis and the Defendants GS and GSN.

54.    That the Plaintiffs were damaged by said acts of the Defendants and the Defendants are unjustly enriched by the actions of the Defendants.

55.    Up to and including the time of the Defendants' repudiation and breach, the Plaintiff Aretakis was ready, willing and able to continue performance of the contract.

## AS AND FOR A SECOND CLAIM

56.    The Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth at length.

57.    That this claim of action is against all of the Defendants or any successor company for promissory and/or equitable estoppel.

58.    That Defendant Coakley, the President of Defendant GSN has or had, at all relevant times, the actual, implied, or apparent authority or agency to make the contract and agreement herein described on behalf of, and to bind, the Defendants GS, GSN and related companies.

59.    That said agreement between the Plaintiff Aretakis and the Defendants GS and GSN was a material inducement with sufficient consideration causing the Plaintiffs to take

11

certain actions, including without limitation, the resignation by the Plaintiff Aretakis of her long-time position with Siemens Corporation, moving the family from Florida to Massachusetts and the sale by the Plaintiff Svirk of certain businesses in Florida.

60.    That in reliance of the promises, agreements and representations made and actions and conduct taken by Defendant Coakley, the Plaintiff Aretakis left her position as Vice President of Siemens Corporation in Boca Raton, Florida and accepted her position as General Manager/Vice President of Defendant GSN'S Tautron Division, which was at all relevant times, operated and located in Westford, Massachusetts.

61.    That in such reliance, the Plaintiffs, relocated their home, two minor children, family and possessions from Boca Raton, Florida to Chelmsford, Massachusetts.

62.    That but for the specific contract, and the promises, agreements and representations made by Defendant Coackley, the Plaintiff Aretakis would not have accepted a position with Defendant GSN and relocated her family to Massachusetts and caused her husband, the Plaintiff Svirk, to sell certain businesses, cease other certain business operations and forego other business opportunities in Florida, and to conduct other business matters occurring in Florida from Massachusetts.

63.    That despite significant efforts by Siemens Corporation to retain Plaintiff, the Plaintiff after receiving confirmation of the contract by Defendant Coackley of her agreement to become a 5/8 of 1% stockholder in the company to be "spun off" from Defendant GS, accepted her position with Defendant GSN.

64.    That, in further reliance of said agreement, the Plaintiffs purchased a home in Chelmsford, Massachusetts and relocated their family and belongings to Massachusetts.

65.    That, despite the performance of the agreement and actions taken by the Plaintiff in reliance of said agreement, the Defendants failed to perform their obligations under said agreement and thereby breached or anticipatorily breached the terms of said agreement.

### AS AND FOR A THIRD CLAIM

66.    T he P laintiffs repeat a nd r eallege e ach a nd e very a llegation c ontained i n t he foregoing paragraphs of this Complaint as if fully set forth at length

67.    That this claim of action is against Defendants or any successor company for deceptive practices under Chapter 93A of the Massachusetts General Law.

68.    That through a recruiting firm and personally, the Defendant Coackley, on behalf of himself and the Defendants GS and GSN, conducted unfair and deceptive practices with respect to the Plaintiff; to wit, undertaking considerable efforts to convince the Plaintiff to resign from her long-standing position with Siemens Corporation, accept a position with the Defendant GSN, relocate her family from Florida to Massachusetts and cause her husband, the Plaintiff Svirk, to sell certain businesses, cease certain businesses, forego certain business opportunities by agreeing to provide the Plaintiff with stock grants in the "spin off" company equal to 5/8 of 1% if she accepted the position offered to her by the Defendant GSN.

69.    That through said recruiting firm and personally to Plaintiff and others, the Defendant Coakley, on behalf of himself and the Defendants GS and GSN, offered to Plaintiff Aretakis and others an interest in a commercial transaction, to wit, stock interest in the "spin off" company of the Defendant GSN.

70.    That but for the actions, representations and offer of the Defendant Coakley, on behalf o f h imself a nd t he D efendants G S a nd G SN, Inrange o r a ny s uccessor c ompanies, t he Plaintiff w ould n ot h ave, t erminated h er t hen e mployment a nd a ccepted t he p osition w ith the

13

Defendant GS and the Plaintiffs would not have relocated their family from Florida to Massachusetts and divested themselves from certain business opportunities and transactions as herein described.

71.    The Defendant Coakley, on behalf of himself and the Defendants GS and GSN, represented to the Plaintiff Aretakis that the value of the 5/8 of 1% of stock in the "spin off" company would be worth $2.5 Million.

72.    The Defendant, Coakley, on behalf of himself and the Defendants GS and GSN advised the Plaintiff Aretakis that the grants of stocks to be given to the Plaintiff Aretakis were also given to seven other employees of the defendant GSN, totaling a 5% equity stake by all such employees in the "spin off" company.

73.    The defendant Coakley, on behalf of himself and the Defendants GS and GSN, described the grant of stock to the Plaintiff Aretakis as a "no risk" proposition to the Plaintiff.

74.    The Defendant Coakley, on behalf of himself and the Defendants GS and GSN, to further induce her to accept the position offered to her with the Defendant GSN, advised her that the monetary value of the Aretakis' stock grants and other employees stock grants had been discussed with the investment bankers engaged by the Defendant GSN for a long period of time.

75.    The agreements and representations made to the Plaintiff Aretakis by the Defendant Coakley, on behalf of himself, and the Defendants GS and GSN, were key factors and material inducements in her decision to, among other things, resign from her longstanding position with Siemens Corporation, accept a position with the defendant GSN, relocate her family from Florida to Massachusetts and cause her husband, the Plaintiff Svirk, to sell certain businesses, cease certain businesses, and forego certain business opportunities in Florida.

76.     That but for those representations made by the Defendant Coakley, on behalf of himself and the Defendants GS and GSN, and the agreements between the Plaintiff Aretakis and the Defendant Coakley, on behalf of himself and the Defendants GS and GSN, the, Plaintiff Aretakis would not have resigned from her long-standing position with Siemens Corporation, accepted the position with the defendant GSN, relocated her family from Florida to Massachusetts and caused her husband, the Plaintiff Svirk, to sell certain businesses, cease certain businesses, forego certain business opportunities.

77.     At the time of the making of all representations and agreements herein referred to, the Defendant Coakley was the President of the Defendant GSN, the entity to be "spun off" and was in the best position to know about the details of the "spin off", the timing of the "spin off", the grant of stock and the value of the stock the Plaintiff Aretakis was to receive.

78.     That when the Plaintiff Aretakis advised Siemens Corporation that she considered leaving the company to accept the position and other benefits offered by the Defendant Coakley, on behalf of himself and the Defendants GS and GSN, Siemens Corporation provided her with a lucrative counter-offer.

79.     That the Plaintiff Aretakis advised the Defendant Coakley and another employee of the Defendant GSN o f the terms of said counter-offer a nd, at that time, the Plaintiff was given reassurances by the Defendant Coakley and said other employee of the Defendant GSN that the "spin off" would occur in the summer of 1997 and that the grant of stock to the Plaintiff Aretakis would equal at least $2.5 Million.

80.     Based upon said continual representations and agreements made by the Defendant Coakley, on behalf of himself and the Defendants GS and GSN, the Plaintiff Aretakis, turned down the counter-offer presented to her by Siemens Corporation, resigned

from her long-standing position with Siemens Corporation, accepted the position and benefits offered to her by the Defendant GSN, accepted the stock grants in the "spin off' company offered to her by the Defendant GSN, relocated her family from Florida to Massachusetts, purchased a home in Chelmsford, Massachusetts, and caused her husband, the Plaintiff Svirk, to sell certain businesses, cease certain businesses, and forego certain business opportunities in Florida.

81.     That the Defendant committed deceptive acts, commercial and contractual breaches and proximately damaged the Plaintiffs.

82.     That the Defendant's deceptive acts as above described could be reasonably found to have caused the Plaintiff Aretakis to act differently from the way she otherwise would have acted.

83.     That a written demand under Chapter 93A of the Massachusetts General Law was made on the Defendant GS pursuant to a letter dated July 24, 1998.

84.     That, upon information and belief, the Defendant GS never responded to said demand.

85.     That the Plaintiffs respectfully request treble damages, attorney's fees, costs and all other damages permitted by said Statute.

## AS AN FOR A FOURTH CLAIM

86.     The Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth at length.

87.     That this claim of action is against Defendants for fraud.

88.    That the Defendant Coakley, on behalf of himself and the Defendants GS and GSN made a contract with the Plaintiff and made representations to the Plaintiff confirming her 5/8% of 1% of stock/equity in the company to be "spun off" from the Defendant GS.

89.    That the Defendant Coackley, on behalf of himself and the Defendants GS and GSN, continually made the representation to the Plaintiff Aretakis that the "spin off" would occur in the summer of 1997.

90.    That the Plaintiff Aretakis discovered that the Defendants Coakley, GS and GSN failed to prepare the Form 10 and other documents required for the "spin off" to meet the summer 1997 "spin off" schedule.

91.    That the Defendant Coakley, on behalf of himself and the Defendants GS and GSN, continually made the representation to the Plaintiff Aretakis through the summer of 1997 and thereafter through the summer of 1998 that there was never any doubt that the "spin off" would occur.

92.    That after making repeated representations and confirmation of the agreement arrived at in June, 1997, the Defendant Coakley, on behalf of himself and the Defendants GS and GSN, "presented to the Plaintiff Aretakis and others and offered a plan for the award of 32,000 stock options at market price, rather than the stock grant the Plaintiff Aretakis and others had agreed to".

93.    That misrepresentations by the Defendants Coakley, GS and GSN that the "spin off" would occur in the summer of 1997 was deliberate misrepresentation of fact to induce the Plaintiff Aretakis to resign from her long-standing position with Siemens Corporation, accept a position with the defendant GSN, relocate her family from Florida to Massachusetts and cause her husband, the Plaintiff Svirk, to sell certain businesses, cease certain businesses, forego

17

certain business opportunities and conduct certain Florida-based businesses from Massachusetts.

94.    That Defendant Coakley, then President of Defendant GSN and thereafter President of Defendant Inrange, has had at all relevant times actual, implied or apparent authority or agency to make contracts and agreements on behalf of, and to bind, Defendants GS and GSN and related companies.

95.    That Defendant Coakley made an oral and material contract and representation to the Plaintiff including that the Plaintiff had an equity/shareholder interest in the successor to the Defendant GSN.

96.    That the material fraudulent representations were made by the Defendant Coakley on or from April, 1997 and continued through July 1998 at his office and principal place of business.

97.    That the Defendant Coakley and the Defendants GS and GSN made the above oral and material representation to the Plaintiff which they at the time, knew were false.

98.    That the Defendants Coakley, GS and GSN knew the Plaintiff relied on such material representation made by the Defendants.

99.    That the Plaintiff relied to her detriment on the material representations made by the Defendant Coakley.

100.    The Plaintiff worked tirelessly and productively to successfully increase sales, which contributed to the sale of the company, but she was duped into it by Defendant Coackley and other Defendants into thinking whe was helping the spin.

101.    That the Defendant Coakley made such fraudulent representations to the Plaintiff, knowing said representations to be false when made, and made same with the intent to deceive

and defraud the Plaintiff and to induce the Plaintiff to resign from her long-standing position with Siemens Corporation, accept a position with the defendant GSN, relocate her family from Florida to Massachusetts and cause her husband, the Plaintiff Svirk, to sell certain businesses, cease certain businesses, and forego certain business opportunities in Florida and to continue to work at the defendant GSN to bolster the company for the "spin off" or eventual sale of the company.

102.    That the Defendant Coakley made such oral representations to the Plaintiff with the actual, apparent or implied authority or agency of the Defendants GS and GSN and these Defendants are responsible for such fraudulent representation.

103.    That Defendant Coakley acted for personal profit and such fraudulent acts resulted in personal gain in favor of Defendant Coakley and other Defendants; to wit, the Defendant Coakley's position with the Defendant Inrange and the Defendants Inrange's and SPX'S assumption of all debt of the Defendant GSN.

104.    That the Plaintiff was proximately damaged thereby and respectfully requests an appropriate amount of compensatory damages and punitive damages.

**WHEREFORE**, the Plaintiffs respectfully request:

1)    $2,500,000.00 with respect to the first and second claims;

2)    $2,750,000.00 with respect to the third and fourth claims;

3)    Treble damages and attorney's fees with respect to the third claims;

4)    All damages allowable by Massachusetts Statute;

5)    An appropriate amount of punitive damages for the intentional and fraudulent acts of the Defendants; and

6)    For such other further and different relief or alternative remedies that this Court

deems just and proper.


DATED:    NEW YORK, NEW YORK
          JULY 14, 2004



_____
JOHN A. ARETAKIS, ESQ.
Attorney for Plaintiffs
EVANTHIA C. ARETAKIS and
CHARLES F. SVIRK, JR.
353 East 54th Street
New York, New York 10022-4965
(212) 751-7853
Facsimile (518) 286-3065

I HEREBY ATTEST AND CERTIFY ON
FEB. 14, 2005 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
     ASSTANT CLERK.

_____
KENNETH Y. GORDON, ESQ., BBO #556762
Local Counsel for Plaintiff
EVANTHIA C. ARETAKIS and
CHARLES F. SVIRK, JR.
63 Chatham Street
Boston, MA 02109
(617) 742-4602



TO:    FRIED FRANK HARRIS SHRIVER & JACOBSON
       One New York Plaza
       New York, New York 10004
       (212) 859-8000

20