**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 05-10257**

| | |
|---|---|
| EVANTHIA C. ARETAKIS *et al.* | ) |
| | ) |
| Plaintiffs, | ) |
| -v.- | ) |
| | ) |
| INRANGE TECHNOLGIES CORP. *et al* | ) |
| Defendants. | ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Preliminary Statement**

The Defendant's Motion for Summary Judgment does not dispute several important facts. The Defendants do not dispute that the Defendant Coackley had the requisite authority or capacity to act on behalf of the corporate Defendant. (Complaint, ¶ 11). The Defendants do not deny that from January 1997 through April 1997 there were representations that GSN (now Inrange) would spin off from its parent company and go public. (Complaint, ¶ 16). The Defendant promised the Plaintiff, and this promise was repeatedly confirmed for the thirteen month period of time the Plaintiff worked at the Defendant Company, that five percent (5%) of the 20 million outstanding shares would be granted to the eight member management team. As a member of this management team, the Plaintiff was therefore promised 5/8 of 1% of the shares as equity in the company. This promise was part of the consideration for the Plaintiff joining the Defendant's company and was reconfirmed by the GSN Vice President of Human Resources, Mr. Bill von Reichbauer. (Complaint, ¶ 17).

The Plaintiff decided to leave her management career at Siemens after twelve years because of the Defendants' promises. If she had stayed at Siemens for only three

more months, Plaintiff would have received a $200,000.00 bonus from Siemens. (Complaint, ¶ 18; Pl. Dep. 51). This demonstrates both the Plaintiff's detrimental reliance and also confirms the Defendant's request for immediacy.

On July 6, 1998, the Network News, an internal newspaper signed by Defendant Coackley, stated that "[a]lthough we have been working toward a July 1 spin date, we decided to delay the date approximately a month so that second quarter results will be available." (Complaint ¶ 31).

On July 7, 1998, in a letter to Defendant Coackley from the Plaintiff, the Plaintiff requested written confirmation that the spin is still on target, with a "not to exceed" date and numerous other elements for clarification of compensation and stock. (Complaint, ¶ 32).

Defendant Coackley's response to the Plaintiff's July 7, 1998 letter indicated that he would not commit to no further delays in the spin date. Further and for the first time, Defendant Coackley gave an indication that there were "no assurances" on the date of the spin until the board of director's voted. This indication was inconsistent with the contract and ongoing assurances and indicated that Defendant Coackley was not only unwilling to stand behind the binding contract, but also indicated that the Defendant may have misrepresented his authority and position. The Plaintiff viewed the Defendant's response as the Defendant's intent to breach the contract. (Complaint, ¶ 33)

## Argument

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment

as a matter of law.'" Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995) (quoting Fed.R.Civ.P. 56(c)), cert. denied, 516 U.S. 1113, 116 S.Ct. 914, 133 L.Ed.2d 845 (1996). "[T]he moving party must show that there is an absence of evidence to support the nonmoving party's position." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990). See also Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who 'may not rest on mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour, 63 F.3d at 37 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." Barbour, 63 F.3d at 36.

**A. Breach of Contract**

The June 1997 written offer of employment (Exhibit B) presented by GSN to Plaintiff Aretakis and signed by her does not constitute a fully integrated, final expression of the terms of the parties' employment agreement. The parties' prior oral agreement, which was reiterated contemporaneous with, and subsequent to, the signing of the June 1997 written offer and was relied on by the Plaintiff in making her decision to accept the offer of employment, is admissible to explain the terms of the employment agreement.

The Defendants argue that GSN's June 1997 written offer of employment (Exhibit B) and subsequent letter discussing relocation benefits (Exhibit C) are unambiguous in their terms and constitute a fully integrated, final expression of the parties' agreement.

They contend that evidence of a prior oral agreement is inadmissible to explain or control the terms of the written employment agreement.

The Defendants misconstrue the facts surrounding the Plaintiff's decision to accept employment with GSN and the contract issues forming the basis of the Plaintiffs' complaint, as well as ignore controlling case law. Summary judgment is inappropriate because evidence as to the parties' negotiations and contemporaneous oral agreements is required to fully understand the terms of their agreement.

The Defendants rely on the general principle in Massachusetts that, under the parol evidence rule, extrinsic evidence of statements made in negotiations resulting in an integrated final agreement are inadmissible if offered to contradict a specific and unambiguous provision of the written contract. <u>Finnerty v. Reed</u>, 2 Mass. App. Ct. 846, 847, 312 N.E.2d 578, 579 (1974). The Plaintiff, however, does not claim that there are any ambiguities in the documentary expression of the terms of her employment. Rather, she argues that the offer letter does not embody a complete integrated agreement, but only constitutes a part of her agreement with the Defendants.

The Defendant's legal analysis is premised on its assertion, offered without any factual support, that the June 6, 1997 offer constitutes an "integrated agreement." However, there is nothing in the agreement itself or the surrounding circumstances supporting this contention. In particular, the document lacks a standard integration clause, there exists an unsigned and unreferenced letter of June 10, 1997 that the defendants claim is an addendum to the agreement, the document refers to other documents not attached, and an examination of the parties' negotiations show that a consistent oral agreement was entered into by the parties prior to the signing of the

written agreement. Compare David v. Dawson, Inc., 15 F.Supp.2d 64, 104 (D. Mass. 1998) (provision stated that, "This Agreement supersedes all prior oral or written agreements between the parties with respect to its subject matter ... and constitutes as a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter). See also Coll v. PB Diagnostic Systems, Inc., 50 F.3d 1115, 1123 (1st Cir. 1995) (where parties reduce agreement to a writing "which in view of its completeness and specificity reasonably appears to be a complete agreement, it is ... an integrated agreement unless" otherwise established as not a final expression); Town & Country Fine Jewelry Group, Inc. v. Hirsch, 875 F.Supp. 872, 876 (D.Mass. 1994) (factors to assess in determining if agreement is integrated include length, existence of integration clause and parties' prior negotiations).

Massachusetts courts have held that receipt of parole evidence is appropriate to demonstrate that what appears to be a complete integrated agreement is in fact not such an agreement, Kelley v. Arnold, 326 Mass. 611, 615, 96 N.E.2d 150, 152 (1950), and have authorized courts to examine the parties' prior or contemporaneous negotiations in determining whether an agreement is in fact integrated. David v. Dawson, Inc., 15 F. Supp.2d at 104 n. 141, citing Restatement (Second) of Contracts § 214 (1981). It has been stated that "[e]vidence of a contract's negotiations and the circumstances of its execution are always admissible to show whether the contract was intended by the parties as an integrated (i.e. final) expression of the terms of their agreement or to show the existence of any uncertainties in the contract's application." Fred S. James & Co. of New England v. Hoffman, 24 Mass. App. Ct. 160, 163, 507 N.E.2d 269, 271 (198). See Robert Indus., Inc. v. Spence, 362 Mass. 751, 753-754, 291 N.E.2d 407 (1973). Moreover,

"[t]he parole evidence rule does not preclude consideration of background facts that explain the context in which the agreement was made." SAPC, Inc. v. Lotus Development Corporation, 921 F.2d 360, 361 n. 2 (1st Cir. 1990).

Accordingly, in reviewing the employment agreement here, the Court may properly rely on extrinsic evidence to ascertain the full intent of the parties and should look to the contract negotiations and the circumstances within which the agreement was made in assisting its determination as to whether the written document was intended as an integrated agreement. In so doing, the Court will find that the document offered by the Defendants does not represent the parties' complete understanding. In addition to the document, the Plaintiff assented to oral representations, assurances and promises made by the Defendants, all of which constituted the final agreement of the parties.

The Defendants attempt to convince the Court that the entire agreement between the parties is to be found within Defendants' Exhibits B and C. A look at these documents belies this contention, and the Defendants' memorandum and related documents confirm that parole evidence is warranted and in fact is actually utilized by them in their arguments.

The Defendants concede that the only document signed by the Plaintiff is the Defendants' Exhibit B, signed on June 12, 1997. They contend that their letter of June 10, 1997 attached as Exhibit C is an addendum to Exhibit B and is part of the sum total of the agreement between the Plaintiff and the Defendants. The problem with the Defendants' argument is that Defendants' Exhibit B, signed by the Plaintiff after the date of Exhibit C does not make any reference to Exhibit C. Exhibit B is dated June 6, 1997 and Exhibit C is dated June 10, 1997. The Plaintiff's signing of only Exhibit B on June 12, 1997

demonstrates that the Defendants' theory of the case actually <u>requires them</u> to utilize parole evidence to make Exhibit C part of the parties' agreement. The Defendants never explain their claim that Exhibit C is the only addendum to Exhibit B, even though Exhibit C is not signed, and is not referenced to Exhibit B.  Moreover, Exhibit B references certain benefits to which the Plaintiff is entitled without describing them in the document, nor have the Defendants included them with their submissions.

In addition, the Defendants attempt to deal with the lack of integration in the agreement by subtly altering the way they refer to the agreement in their memorandum of law.  Early in the memorandum, they reference the "written" agreement.  (See Defs.' Memorandum, pp. 1-2 (stock options not part of "written" agreement); *Id.*, p. 7 (provision regarding stock options could not legally be put in writing)).  Later in the memorandum, the Defendants switch from referring to the "written" agreement and begin to reference the entire "offer."  (See Defs.' Memorandum, p. 7 (stock options not part of "offer"); p. 16 (Defendants conflate written agreement with entire terms of offer when they question Plaintiff's lack of investigation)).

The Defendants never address the logical reason why the Plaintiff did not investigate the difference between the written agreement and the oral promises made to her by the Defendants regarding her equity stake in the company:  they had expressly told her that the oral terms could not legally be put in writing but that they indeed remained part of the terms of her employment. (See Defs.' Exhibit A at 64:6-17). The Plaintiff's actions at the time of the negotiations and agreement, and the Defendants' contemporaneous statements support this interpretation.  The Defendants were fully

aware of the importance of the equity stake to her, and the Plaintiff in turn would not have signed a document stating that it was not part of the agreement.  Id.

      Consideration of the circumstances and context in which the employment agreement was made is instructive.  The Plaintiff left a long-term, stable, high-paying position and relocated her family across the country for one reason: equity. She was requested to begin immediately upon signing the June 6 offer letter as the spin-off was to happen very quickly and required the management team to be in place. (Complaint, ¶ 18). As a result, the Plaintiff had to forego her former employer's bonus money and related salary and benefit components, which would have required staying with the company until the end of September. (*Id*). As she repeatedly stated in her deposition, there was no other reason to make the job change or physical move except for the contracted-for equity. (Exhibit A at 13:17; 27:21; 29:17; 43:16). And the Defendant's knew it. (*Id*. at 64:15-17).

      The Defendants went to extreme lengths to recruit the Plaintiff and induce her to accept employment with GSN. In its recruitment efforts, the search firm confirmed with the Plaintiff the intention of GSN to spin off a unit from the parent company and that the position would involve an equity position in the new company.  (Complaint, ¶ 16). Knowing that the equity stake in a spin-off company was important to the Plaintiff's agreeing to employment with GSN, Defendant Bob Coackley, who represented himself to the Plaintiff as CEO and President of GSN during the employment negotiations (Exhibit A at 58:15-18), expressed that he did not deem the likelihood of a spin-off as risky. (Exhibit A at 40: 5-24, 41:1-6). He told the Plaintiff that he was charged with signing on people like the Plaintiff before the spin to increase the price established for the equity

position. (Exhibit A at 40:5-16). He also used various numbers and formulas showing the Plaintiff how she would benefit from the spin. (Exhibit A at 40:17-24). Moreover, exact and specific shares were agreed to. (Complaint, ¶ 17).

In addition, Coackley led the Plaintiff to believe that the board had already agreed to many of the issues he had discussed with her. (Exhibit A at 43:10-12). When she expressed her concern that if there was any risk it wouldn't make sense for her to make the move, Coackley said that the equity stake of 5/8ths of 1% was agreed and that they were far enough along that the spin was imminent. (Exhibit A at 43:15-22). He stated that the spin-off of the company would be happening very quickly (Complaint, ¶ 18), that it was critical that his team be in place as soon as possible, (Id.; Exhibit A at 43: 22-24, 44:1-3), and the only outstanding issue that needed to happen before the spin could take place was to fill two vacant positions. (Exhibit A at 44:4-17).

The Defendants state that there was no mention in the June 6 offer of any stock options or equity in a spin-off of GSN, and claim that the Plaintiff's deposition shows that she "understood that equity in GSN was not included as part of either the June 6 offer or the addendum." (Defs.' Memorandum at 7). The Defendants support this claim with partial quotes taken from the Plaintiff's deposition: "[Coackley] made it very clear that that was not something that he could put in writing in the offer letter . . . [he stated that] legally he couldn't do it." They further state that this was confirmed by von Reichbauer: "they weren't allowed to do that." (Defs.' Memorandum at 7, citing Exhibit A at 64:3-6; 65:19-21).

The Defendants omit critical portions of the Plaintiff's statements to suit their argument. The statement, when read in full, unequivocally supports the Plaintiff's

position that it was understood by the parties that despite its exclusion from the June 6 offer letter, the oral discussions and representations regarding the Plaintiff's equity stake in the spin-off company was part of their agreement, critical to the Plaintiff's decision to accept employment, and understood by the Defendants as such. She stated that "[Coackley] made it very clear that that was not something that he could put in writing in the offer letter at this time." When asked if this concerned her, the Plaintiff responded, "Yes, but he was very convincing that at the point in time they were at, legally he couldn't do it, but that he - and he also had Mr. von Reichbauer also confirm that, that they weren't allowed to do that. But obviously they understood that I wouldn't be interested in this position without that equity position." (Exhibit A at 64:6-17; see also Plts.' Aff. at ¶ 11).

These facts make clear that the Defendant's representations regarding the spin-off were part and parcel of the agreement, were not inconsistent with the written agreement, and were relied on by the Plaintiff in making her decision. Thus, the parties here never adopted the June 6 offer of employment as a 'complete and accurate integration' of their agreement, instead limiting its terms by "parol agreement." See McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 709, 563 N.E.2d 188, 194 n. 7 (1990), citing 3 Corbin on Contracts § 582, at 463 (1960.) See also 9 J. Wigmore, Evidence § 2435, at 118 and § 2439 at 128 (1981).

As the Court of Appeals for the First Circuit has stated "[a]n oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject matter, if the agreement is not inconsistent with the integrated contract, and (a) is made for separate

consideration or (b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract." National Tax Institute, Inc. v. Topnotch at Stowe Resort and Spa, 388 F.3d 15, 20 (1st Cir. 2004), citing Restatement (Second) of Contracts, § 240 (1979).

Massachusetts state appellate courts also have concluded that "[i]n some circumstances an oral agreement modifying the terms of a later-signed written agreement goes directly to the question whether the written document is an integrated statement of the entire agreement of the parties." Schinkel, Inc. v. Maxi-Holding, Inc., 30 Mass. App. Ct. 41, 565 N.E.2d 1219 (1991). A finding that the writing is not an integrated statement of the parties' agreement can open the way for proof of other elements of the agreement. Antonellis v. Northgate Constr. Corp., 362 Mass. 847, 849, 851, 291 N.E.2d 626 (1973).

In Schinkel, Inc. v. Maxi-Holding, Inc., 30 Mass. App. Ct. at 47, 565 N.E.2d at 1223, the Massachusetts Appeals Court stated that "where the parties' conduct after signing the written agreement conforms with a previous oral modification, rather than with the terms of the written agreement, it may reasonably be inferred that the parties have agreed after the signing to be bound by the oral modification of the written contract, ratifying it, in effect, by their conduct." In making this determination, the court directly contrasted the case at issue here with those relied on by the Defendants which concern the inappropriateness of accepting evidence offered to contradict the written terms. See Roberts Indus., Inc. v. Spence, 362 Mass. at 754, 291 N.E.2d 407 (1973) ("Expressions in our cases to the effect that evidence of circumstances can be admitted only after an ambiguity has been found on the face of the written instrument have reference to evidence offered to contradict the written terms"). See also 3 Corbin, Contracts §§ 572A

and B (1960) & Supp. 1971); Restatement (Second) of Contracts § 214 (1981). As the Plaintiffs state, supra, the oral and written agreements are not inconsistent or contradictory.

The unreported case of Montlouis v. Pirus Networks, Inc., 2005 WL 1009523 (Mass. Super. March 15, 2005), cited by the Defendants, is neither controlling nor relevant. Montlouis concerned a termination, hostile work environment and retaliation employment case where the Plaintiff was the only African American who worked in the Defendant's company. The court rejected his breach of contract claim because it found that the Stock Option Plan referenced in the Plaintiff's written offer of employment, which provided for a four year vesting plan for those options, made clear that it should not be understood as a promise of continued employment. Id. at 8. The court stated that this contract provision superseded any promise made during his employment interview that he would be employed by the Defendant for at least four years. Id. at 9.

Whether or not the written agreement is considered the final agreement of the parties, parole evidence can be used to assist the court in determining the parties' obligations under the agreement. The Court of Appeals for the First Circuit has noted that "[t]he Massachusetts Supreme Judicial Court has held that '[a contract] is to be read in the light of the circumstances of its execution, which may enable the court to see that its words are really ambiguous.'" Donoghue v. IBC USA (Publications), Inc., 70 F.3d 206, 216 (1st Cir. 1995), quoting Roberts Indus. v. Spence, 362 Mass. at 751, 291 N.E.2d at 409. It further noted the court's observation in affirming the judgment of a trial court that "[t]he judge quite properly heard evidence to aid in the construction of the agreement, even before he decided whether the agreement was ambiguous." Cullinet Software, Inc.

v. McCormack & Dodge Corp., 400 Mass. 775, 511 N.E.2d 1101, 1102 (1987). See also Arthur L. Corbin, Corbin on Contracts § 582 at 448-50 (1960), quoted in, E. Allan Farnsworth, Contracts § 7.3 at 474 (2d ed. 1990) ("The writing can not prove its own completeness and accuracy.... The evidence that the [parol evidence] rule seems to exclude must sometimes be heard and weighed before it can be excluded by the rule").

The Defendants have not, and cannot contradict the Plaintiffs' claim that there exist genuine issues of material fact regarding whether the June 6 offer letter constituted a final integrated agreement of the parties, requiring the introduction of parole evidence on the issue. They, too, have sought to introduce such evidence. Accordingly, the Plaintiffs respectfully request that their request for summary judgment on their claim for breach of contract be denied.

**B. Fraud**

To recover for fraud in Massachusetts, a Plaintiff "must allege and prove that the Defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the Plaintiff to act thereon, and that the Plaintiff relied upon the representation as true and acted upon it to his [detriment]." Barrett Assocs., Inc. v. Aronson, 346 Mass. 150, 152, 190 N.E.2d 867 (1963) (internal citations omitted). See also Metropolitan Life Ins. Co. v. Ditmore, 729 F.2d 1, 4 (1st Cir. 1984). Furthermore, the Plaintiff's reliance on the misrepresentation must be reasonable. Chedd-Angier Prod. Co. v. Omni Pub. Int'l, Ltd., 756 F.2d 930, 939 (1st Cir. 1985). It has been held that fraudulent or intentional misrepresentation exists where one party misleads another. Twin Fires Inc., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 423, 837 N.E.2d 1121 (2005).

As a general matter, statements that are promissory in nature and statements of conditions to exist in the future are not actionable, <u>Gerli v. G.K. Hall & Co.</u>, 851 F.2d 452, 456 (1st Cir. 1988), unless at the time the Defendant made the statement, he or she did not intend to carry out the promise. <u>Id</u>. Thus, statements of present intention as to future conduct may be the basis for a fraud action if the statements misrepresent the actual intention of the speaker and were relied upon by the recipient to his damage. <u>McEvoy Travel Bureau, Inc. v. Norton, Co.</u>, 408 Mass. at 709, 563 N.E.2d 188.

Coackley's present intent, or state of mind, at the time he made the promises to the Plaintiff regarding her equity stake in the spin-off and continued reassurances of the certainty of the spin-off are the relevant issues for consideration of the Plaintiff's claim. Because of the difficulty of presenting proof of intent in fraud cases, the First Circuit has advised caution when disposing of the state of mind issue on summary judgment. See <u>Metropolitan Life Ins. Co.</u>, 729 F.2d at 5.

The Plaintiff states in her deposition that during the party's recruitment discussions, Coackley reassured her several times that the spin-off was imminent, of little risk and that she would have an equity stake in the company. (Exhibit A at 43:15-22; 40:5-24; 41:1-6). In addition, the complaint alleges, and for purposes of this motion the Court is required to draw all inferences in the Plaintiff's favor, that Coackley represented to the Plaintiff that the value of the 5/8 of 1% of stock in the spin-off company would be worth $2.5 Million. (Complaint, ¶ 17). It is uncontested that Coackley continued to make these assurances and representations after the Plaintiff began her employment with the Defendants. (Id.). These facts create a material issue of fact as to whether Coackley intended at the time he made the alleged statement to fulfill the promise to compensate

the Plaintiff, especially when viewed in the context of the First Circuit's advice that courts exercise caution on the specific question at issue here.

Moreover, there is sufficient evidence that the Plaintiff relied on the alleged misrepresentations to her detriment. The Plaintiff alleges in her complaint that in reliance on Coackley's promises, she terminated her employment with Siemens Corporation and went to GSN, forfeiting a bonus worth $200,000.00. (Complaint, ¶ 18; see also Plts.' Aff. at ¶ 12). Consequently, although the details have not been fully explored at this point, there would seem to be a genuine issue of material fact as to whether the Plaintiff reasonably relied on Coackley's representations.

As stated above, the Plaintiff alleges that Defendant Coackley entered into an enforceable oral agreement with the Plaintiff and made representations to her confirming her share of stock and equity in the company to be spun-off from GSN, and continually represented that the spin-off was imminent. (Complaint, ¶ 17). Despite Coackley's assurances to the Plaintiff prior to her accepting the Defendants' offer of employment that everything was in place for the spin-off to occur, the Defendants in fact had failed to prepare necessary documents required to meet the summer 1997 spin-off schedule that had been discussed on several occasions with the Plaintiff. (Complaint, ¶20). Coackley's misrepresentations as to the imminence of the spin-off continued through the summer of 1998. (Plts.' Aff. at 30).

These facts indicate that the Defendants deliberately misrepresented the imminence of the spin-off to induce the Plaintiff to resign from her long-standing position with Siemens Corporation and accept a position with the Defendant GSN. The Defendants made these material representations to the Plaintiff which they at the time,

knew were false and they knew the Plaintiff relied on them in making her employment decision.

This evidence would permit a fact finder to conclude that the actual intentions of the Defendants were very different from the statements made to the Plaintiff to induce her to sign the offer of employment, and that the Defendants had an undisclosed purpose of using the Plaintiff for purposes of making GSN more attractive for sale.

As previously discussed, the Plaintiff has alleged in her Complaint that she was fraudulently induced to enter into an employment arrangement with the Defendants by a series of misrepresentations made by them. The parole evidence rule does not bar evidence of the misrepresentations. It is well established that the rule does not apply when the complaining party alleges fraud in the inducement. See Broomfield v. Kosow, 349 Mass. 749, 759, 212 N.E.2d 556 (1965). See also Restatement (Second) of Contracts § 214 (1981). Litigants have successfully relied on this exception to offer evidence tending to show "fraud in the inducement"-- that a party made a promise collateral to the document which it never intended to fulfill. McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. at 709, 563 N.E.2d 188, 192 (jury warranted in finding that Defendant induced Plaintiff to enter into contract with it by misrepresenting that it had no intention to invoke a termination clause the Defendant had unilaterally inserted in the contract).

Because there exist issues of material fact regarding whether the Defendants acted fraudulently in their efforts to induce the Plaintiff to work for GSN and in light of the prudence urged on courts in Massachusetts when disposing of the state of mind issue on summary judgment, the Defendants' motion for summary judgment on the Plaintiff's fraud claim should be denied.

**C. G.L. c. 93A**

The remedies of G.L. c. 93A are available to the Plaintiff because GSN's recruitment of the Plaintiff was commercial in nature and her claim arises out of the Defendants' recruitment conduct.

GSN, through a recruiting firm and in conversations with the Plaintiff, conducted unfair and deceptive practices with respect to the Plaintiff by undertaking considerable efforts to convince her to resign from her long-standing position with Siemens Corporation, forgo a bonus from Siemens and reject a lucrative counteroffer, accept a position with GSN, relocate her family from Florida to Massachusetts and cause her husband, to sell certain businesses, cease certain businesses, forego certain business opportunities by agreeing to provide the Plaintiff with stock grants in the spin-off company if she accepted the position offered to her by GSN. Defendant Coackley made continual representations and agreements regarding the equity stake she would attain in the spin-off. Without these actions and representations, the Plaintiff would not have terminated her then employment and accepted the position with the Defendants. As discussed supra, the agreements and representations made to the Plaintiff regarding equity in the imminent spin-off company by the Defendant Coackley, were key factors and material inducements in her decision.

The cases relied on by the Defendants hold that no G.L. c. 93A action lies where the Plaintiff's claim arises out of the parties' employment relationship. See, e.g., Manning v. Zuckerman, 388 Mass. 8, 13 (1983). However, the Plaintiff's G.L. c. 93A claims here do not arise out of her employment with the Defendants but out of the methods used by the Defendants to recruit her and induce her to terminate her longstanding employment

with Siemen's Corporation and accept a position with GSN. The Plaintiff stakes her claim in the considerable and continued efforts made by the Defendants in recruiting her, a time in which there was no relation between the parties, let alone an employment relationship. The recruitment process is outside the parties' employment relationship and more akin to "an arms length commercial transaction between distinct business entities." <u>Hoffman v. Optima Systems, Inc.</u>, 683 F.Supp. 865, 871 (D.Mass. 1988). Accordingly, summary judgment on this claim is inappropriate.

**D. Promissory Estoppel**

Recovery is permitted under the theory of promissory estoppel "if (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise." <u>Loranger Construction Corp. v. E.F. Hauserman Co</u>., 6 Mass. App. Ct. 152, 154, 374 N.E.2d 306, 308, aff'd, 376 Mass. 757, 384 N.E.2d 176 (1978) (citations omitted). "[T]he party invoking [promissory estoppel] must have reasonably relied on the alleged promise to his detriment." <u>Hall v. Horizon House Microwave</u>, 24 Mass. App. Ct. 84, 506 N.E.2d 178, 184 (1987).

Where a written statement conflicts with a prior oral representation, reliance on the oral representation is generally held to be unreasonable. See <u>Trifiro v. New York Life Insurance Co</u>., 845 F.2d 30, 33-34 (1st Cir. 1988) ("The conflicting content of [the Defendant's] oral statement with [his] written statement ... should have placed [the Plaintiff] on notice that he should not rely on either statement."). When "[c]onfronted by

such conflict a reasonable person investigates matters further; he receives assurances or clarification before relying." Id. As discussed supra, there is no conflict or inconsistency between the Defendants' oral representations and the written offer. Even if they are deemed inconsistent, a brief review of the controlling case law shows that the Plaintiff's reliance was nonetheless reasonable.

The Defendants rely on Coll v. PB Diagnostic Systems, Inc., 50 F.3d 1115 (1st Cir. 1995) to assert that the Plaintiff's reliance on the oral promises regarding the spin-off and the accompanying stake in equity were unreasonable. The facts in Coll are distinguishable from those present here.

In affirming the District Court's grant of summary judgment in the employer's favor, the Court in Coll concluded that the Plaintiff could not reasonably have relied on a promise by his employer of a long-term incentive plan (LTIP) worth $1,000,000 where his "employment offer was clearly at odds with his understanding of [the employer's] prior oral representations regarding long-term compensation." The Plaintiff had voiced concern that the employer's first offer letter did not contain the language he sought regarding the LTIP, but acquiesced when the second offer letter simply rephrased its predecessor's noncommittal language because he was concerned that the employer would think he did not trust them. The court determined that the employer's refusal to "firm-up" the long-term compensation language rendered any reliance on prior oral representations unenforceable." Id. at 1124-1125.

Here, the Plaintiff's deposition makes clear that despite the equity promises not being included in the written offer of employment, it was her firm understanding, and indeed the understanding of the Defendants that the provision was a critical component of

their agreement. She was told that the promise could not be included in the agreement for legal reasons, and accepted this reasoning in light of the Defendants' assurances, and their knowledge that those assurances were critical to her employment decision. See discussion supra.

Viewing the facts in the light most favorable to the Plaintiff, and drawing all inferences in her favor, summary judgment on the Plaintiff's collateral estoppel claim should be denied.

## II. Conclusion

The Plaintiff has set forth specific facts on each of her claims. When viewed in a favorable light and with all inferences drawn in her favor, there exist issues of material fact on each claim. Accordingly, the Plaintiff respectfully requests this Court deny the Defendants' Motion for Summary Judgment in its entirety.

EVANTIA C. ARETAKIS and CHARLES F. SVIRK
By their attorneys,

/s/ Kenneth Gordon
Kenneth I. Gordon, BBO# 556762
63 Chatham Street
Boston, MA 02109
(617) 742-4602
kgordon@gordonlawoffice.com

_/s/ John J. Aretakis_
John J. Aretakis, *Pro Hac Vice*
353 E. 54th Street
New York, NY 10022
(212) 751-7853 fax (518) 286-3065
aretakis@nycap.rr.com