UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EVANTHIA C. ARETAKIS and<br>CHARLES F. SVIRK, JR.,<br><br>            Plaintiffs,<br><br>      v.<br><br>INRANGE TECHNOLOGIES CORP.,<br><br>            Defendant. | Civil Action No. 05-10257-DPW |

**DEFENDANT'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.      Plaintiff's Breach of Oral Contract Claim**

Aretakis argues that the employment agreement ("Employment Agreement" or "Agreement") that she signed with GSN was not a fully integrated, final agreement, and that the Court should therefore consider extrinsic parole evidence that a prior, oral agreement existed. Under Massachusetts law, however, any prior oral agreement is superceded by the later, written agreement.

**      A.      Aretakis' Agreement Was Fully Integrated**

The interpretation of a contract under Massachusetts law is ordinarily a question of law for the court. Trent Partners and Associates, Inc. v. Digital Equipment Corp., 120 F.Supp.2d 84, 98 (D. Mass. 1999). If a contract is found to be an integrated, unambiguous document, evidence of alleged prior oral agreements cannot be admitted to vary or modify the contract's terms. Id. The question of whether a contract is integrated (i.e., a complete description of the parties' agreement) can normally be inferred where the contract is comprehensive and specific. Id. A contract is ambiguous where "its terms are inconsistent on their face or where the phraseology

can support [a] reasonable difference of opinion as to the meaning of the words employed and obligations undertaken." Rey v. Lafferty, 990 F.2d 1379, 1384 (1st Cir. 1993). Only if there is a question concerning completeness or ambiguity should the court look to extrinsic evidence beyond the contract itself. Trent Partners at 98-99; see Boston Edison Co. v. F.E.R.C., 856 F.2d 361, 367 n.3 (1st Cir. 1988) (if the contract contains no ambiguity, then no extrinsic evidence is considered).[1]

Here, Aretakis herself has acknowledged that her Employment Agreement with GSN is not ambiguous. See Plaintiff's Memorandum at 4 ("The Plaintiff, however, does not claim that there are any ambiguities in the documentary expression of the terms of her employment."). This acknowledgment by plaintiff should put to rest any need to consider parole evidence. Moreover, a review of the Agreement itself supports the conclusion that it is not ambiguous; it clearly specified Aretakis' base salary, a hiring bonus of $40,000, two additional bonus opportunities, stock options in GSN's parent company, and eligibility for the GSN long-term incentive program. See Naples Affidavit, Exh. B (copy of the written Agreement).

The integrity of the Agreement is further demonstrated by Aretakis' own actions in negotiating it. Where a party acts in a way that demonstrates her intent that the Agreement governs the relationship, this supports a finding of integration. Trent Partners, 120 F.Supp.2d at 99. Here, after the original Agreement was presented to her, Aretakis negotiated additional terms, including a $10,000 relocation allowance and additional vacation eligibility. These undisputed facts demonstrate that Aretakis viewed the Agreement as an enforceable Agreement needing further clarification. Thus, any alleged oral representations were superceded by the Agreement. Id. (disputing language in contract before signing shows intent to be bound by it).

---

[1] If the agreement is ambiguous, extrinsic evidence of the circumstances of the parties leading to its execution may be used for the purpose of "elucidating, but not of contradicting or changing its terms." Robert Industries, Inc. v. Spence, 362 Mass. 751, 753-54, 291 N.E.2d 407, 409 (1973).

The cases that Aretakis cites in her opposition to this motion are not persuasive. For instance, the First Circuit's decision in Turner v. Johnson & Johnson, 809 F.2d 90, 93 (1st Cir. 1986) actually supports GSN's position. Turner involved the sale by the plaintiffs of an electric thermometer business to Johnson & Johnson in return for cash and royalties. There were extensive negotiations, and the parties exchanged several versions of a written contract. At one point during the negotiations, Johnson & Johnson represented to the plaintiffs that it would promote the sale of the thermometer, offer it to customers, and educate health care professionals on how to use it. The final version of the written contract, however, stated that Johnson & Johnson was not obligated to use its best efforts to market the thermometer.

When Johnson & Johnson failed to market the thermometer, the plaintiffs sued, alleging common law fraud. The Court reversed a jury verdict for the plaintiffs. The court held that "where both parties were experienced in business and the contract was fully negotiated and voluntarily signed, plaintiffs may not raise as fraudulent any prior oral assertion inconsistent with a contract provision that specifically addressed the particular point at issue." Id. at 97.

As in Turner, both parties here were experienced in business. Their contract was negotiated and voluntarily signed. The Agreement specifically addressed both compensation and equity, the particular point that Aretakis now claims should be modified by parole evidence. As Turner makes clear, such parole evidence is not admissible.

The fallacy in Aretakis' argument is that there is no disagreement about the terms of the written contract to which she is a party. As the First Circuit has clarified:

> A party claiming to benefit from ambiguity (for example, by being allowed to proffer extrinsic evidence supporting its interpretation) must show ambiguity in the meaning of the agreement with respect to the very issue in dispute. Demonstration of ambiguity in some respect not material to any existing dispute serves no useful purpose.

2728974.1

3

Donoghue v. IBC USA (Publications), Inc., 70 F.3d 206, 215 (1st Cir. 1995). Here, there is no ambiguity in the meaning of Aretakis' Agreement with respect to her compensation and equity position. Accordingly, no parole evidence is necessary.

      **B.    Any Oral Agreement Was Too Indefinite To Enforce**

Even if there were a genuine factual question regarding integration, the evidence of a prior, oral agreement is too indefinite to permit a finding of an enforceable contract because the alleged promises were not definite enough to form a contract. In particular, Coackley never promised that the spin-off would occur; he specifically cautioned Aretakis that there was some risk that it might not occur, but that joining GSN "was far less risky than joining a startup." (Aretakis Dep. 40:17-18.)[2] The discussion as to the value of her equity was also indefinite: Aretakis understood that the number of shares she might receive, and their price, was only an estimate. (Aretakis Dep. 35:18-22, 42:7-11.) As to their price, Coackley told her that the share price after the IPO was issued might be roughly $20, and that the price at which she would be permitted to purchase shares would be "someplace in the neighborhood of $10 or so.") Ultimately, Aretakis understood that Coackley's valuation was merely an estimate based on the business unit's current revenue and profitability. (Aretakis Dep. 42:16-24; 43:1-5.) There was no definite and specific promise regarding the timing of the spin-off, the number of shares, their price or her strike price. These conversations were far too indefinite to form a binding oral contract. See Read v. McKeague, 252 Mass. 162, 164, 147 N.E. 585, 586 (Mass., 1925) (all the essential terms of a contract must be definite and certain so that the intention of the parties may be discovered, the nature and extent of their obligations ascertained, and their rights determined).

---

[2] The cited pages are attached to the previously filed Affidavit of Jonathan Naples.

II.  **Promissory Estoppel**

Aretakis' promissory estoppel claim is based only on her "*firm* understanding" that the alleged oral promise regarding equity in a future spin-off was a component of her Agreement with GSN.  A subjective understanding is not enough, however.  The party claiming promissory estoppel must have *reasonably* relied on the alleged promise.  Coll v. PB Diagnostic Systems, Inc., 50 F.3d 1115, 1125 (1st Cir. 1995).  Reliance on an oral representation is unreasonable where a later written statement conflicts with it.  Id. at 1124.  Aretakis' claim fails.

III. **Claim For Deceptive Practices Under Chapter 93A**

Aretakis has misread or misrepresented the holding in Hoffman v. Optima Systems, Inc., 683 F.Supp. 865 (D. Mass. 1988) in support of her claim for deceptive trade practices.  Hoffman recognizes the well-established principle that Chapter 93 does not apply to disputes arising out of the employment relationship.  Id. at 871, quoting Manning v. Zuckerman, 388 Mass. 8, 15, 444 N.E.2d 1262 (1983).  The Court in Hoffman did not, as Aretakis states in her memorandum, conclude that the recruitment process was outside the parties' employment relationship and therefore a commercial transaction.

> In the present case, the dispute between Hoffman and the defendants arises out of an oral employment contract that was negotiated in October, 1982.
> \* \* \*
> [T]his Court concludes that if the defendant committed any unfair or deceptive act, such acts 'necessarily occurred in the context of the parties' employment relationship . . . , and not in an arms-length commercial transaction between distinct business entities.  Accordingly, the Court grants the defendants' motion to dismiss this particular claim.

Hoffman, 683 F.Supp. at 871 (internal citations omitted).  Aretakis' claim should be dismissed for the same reason.

IV.    **Fraud**

To survive this motion as to her fraud claim, Aretakis must prove that when Coackley made the allegedly fraudulent statements he had no intention of carrying them out. Gerli v. G.K. Hall & Co., 851 F.2d 452, 456 (1st Cir. 1988). The undisputed evidence demonstrates, however, that Coackley continued to strive to achieve a spin-off of the division right up until the time that Aretakis resigned. There is no evidence beyond mere speculation that Coackley did not intend to pursue the spin-off or grant equity in the new entity to Aretakis. See Sargent v. Tenaska, Inc., 914 F. Supp. 722, 730 (D. Mass. 1996), aff'd, 108 F.3d 5 (1st Cir. 1997).

The timing of the alleged misrepresentations also undercuts Aretakis' claim. In McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 709, 563 N.E.2d 188, 192 (1990), plaintiff alleged that defendant fraudulently induced him to sign a written contract by declaring that key provisions were "meaningless" or "inoperative". The Court contrasted that fact pattern with the one in Turner v. Johnson & Johnson, 809 F.2d 90, 98-99 (1st Cir. 1986) where the alleged fraud was committed during negotiations prior to the signing of the contract, not during the actual signing as in McEvoy. Here, of course, Aretakis alleges that the fraudulent representations were made during negotiations, not during the signing of the Agreement. Accordingly, she will not be able to prove her claim for fraud.

Plaintiff's own memorandum best illustrates the weakness of this claim. She correctly states that Coackley's "present intent, or state of mind, at the time he made the promises to Plaintiff . . . are the relevant issues for consideration", but she fails to proffer any evidence of that state of mind. See Plaintiff's Memorandum at 14. She also claims that GSN "deliberately misrepresented the imminence of the spin-off", but again points to no evidence to support this

assertion.  Id. at 15.  Absent such evidence, her fraud claim simply cannot survive summary judgment.

## CONCLUSION

The evidence in this matter fails to raise a genuine issue of material fact supporting any of Plaintiffs' claims.  Therefore, summary judgment is appropriate on all counts.

INRANGE TECHNOLOGIES CORP.

By its attorneys,

Dated:  March 13, 2006

/s/ Thomas J. Conley
Thomas J. Conley (*Pro Hac Vice*)
Leonard, Street and Deinard, PA
150 South Fifth Street, Suite 2300
Minneapolis, MN  55402
(612) 335-1634
(612) 335-1657 (fax)

Jeffrey L. Levy (BBO#559438)
Corrigan & Levy LLP
896 Beacon Street
Boston, MA  02215
(617) 247-3800

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those identified as non-registered participants on March 13, 2006.

/s/ Jeffrey L. Levy